# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

KENNETH GAYNOR, et al., Individually,
and on behalf of himself and all others
similarly situated,

       Plaintiff,

v.

DELOY MILLER, et al.

       Defendants.

CASE NO. 3:15-cv-545-TAV-CCS

**(Consolidated)**

Varlan/Shirley

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
MASTER CONSOLIDATED
COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.   BACKGROUND FACTS ...........................................................................................3

    A.   The Parties. .....................................................................................................3

    B.   The Valuation of Miller Energy's Alaska Assets .............................................4

    C.   The 2012 Offering and Registration Statement. ...............................................6

    D.   As Oil Prices Collapse, Miller Energy Writes Down The Value Of the
        Alaska Assets, Then Declares Bankruptcy. ......................................................7

II.  APPLICABLE PLEADING STANDARDS ...............................................................8


ARGUMENT ........................................................................................................................9

III. ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED. ........................................9

    A.   Plaintiffs' Section 11 Cause of Action Is Barred By the Three-Year Statute
        of Repose. .........................................................................................................9

    B.   All Causes of Action Are Barred By the One-Year Statute of Limitation. ..........10

IV.  PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED. .............................12

    A.   Plaintiffs Cannot State A Section 11 Claim Against Defendants
        Schlumberger, Gower, Leary and Richardson, Because They Were Not
        Directors When The Registration Statement Was Filed And Did Not Sign
        It. ....................................................................................................................12

    B.   Plaintiffs Lack Standing To Bring A Section 11 Claim. ....................................13

    C.   Oil and Gas Reserve Estimates Are Statements of Opinion That Plaintiffs
        Fail To Allege Were Subjectively False. ..........................................................15

    D.   The Complaint Fails To Allege That Individual Defendants Made False
        Statements. .......................................................................................................16

    E.   Negative Loss Causation Is Apparent from Plaintiffs' Allegations and The
        Judicially Noticeable Market Price of Miller Stock ..........................................17

V.   PLAINTIFFS' SECTION 12(A)(2) CLAIM SHOULD BE DISMISSED. ...................18

    A.   Plaintiffs Lack Standing To Bring A Section 12(a)(2) Against The Moving
        Individual Defendants, Who Are Not Statutory Sellers. ....................................18

    B.   Plaintiffs Lack Standing To Bring A Section 12(a)(2) Claim Because They
        Did Not Purchase Directly In Any Offering. .....................................................20

VI.  PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED. .............................21

VII. CONCLUSION .........................................................................................................22

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................................... 9, 14, 20

*Azzolini v. Corts Trust II for Provident Financial Trust,*
2005 WL 3448053 (E.D. Tenn. December 14, 2005) .......................................................... 17

*Ballay v. Legg Mason Wood Walker, Inc.,*
925 F.2d 682 (3rd Cir. 1991) .............................................................................................. 20

*Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.,*
No. 1:07-CV-750, 2009 WL 806714 (S.D. Ohio Mar. 25. 2009) ........................................ 3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................... 9, 14, 20

*Caiafa v. Sea Containers Ltd.,*
331 F. App'x 14 (2nd Cir. 2009) ........................................................................................ 21

*Del Noce v. Delyar Corp.,*
No. 72 Civ. 1819, 1976 WL 813 (S.D.N.Y. July 30, 1976) ................................................ 15

*DeMaria v. Andersen,*
153 F. Supp. 2d 300 (S.D.N.Y. 2001) ................................................................................ 19

*Fait v. Regions Financial Corp.,*
655 F.3d 105 (2nd Cir. 2011) .............................................................................................. 5

*Federal Housing Finance Agency v. UBS Americas, Inc.,*
2012 WL 2400263 (S.D.N.Y. June 26, 2012) .................................................................... 10

*Finkel v. Stratton Corp.,*
962 F.2d 169 (2nd Cir. 1992) .............................................................................................. 10

*Grand Lodge of Pa. v. Peters,*
550 F. Supp. 2d 1363 (M.D. Fla. 2008) .............................................................................. 14

*Grillo v. Tempur-Pedic Int'l, Inc.,*
553 F. Supp. 2d 809 (E.D. Ky. 2008) .................................................................................. 3

*Gustafson v. Alloyd Co., Inc.,*
513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ...................................................... 20

*Harner v. Prudential Sec. Inc.*,
785 F. Supp. 626 (E.D. Mich. 1992) .................................................................................11

*In re Alamosa Holdings, Inc. Sec. Litig.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ...............................................................................13

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................................................17

*In re Deutsche Telekom AG Sec. Litig.*,
No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ...................................20

*In re Dynegy, Inc. Sec. Litig.*,
2005 WL 807076 (S.D. Tex. Mar. 10, 2005) .......................................................................13

*In re FirstEnergy Corp. Sec. Litig.*,
316 F. Supp. 2d 581 (N.D. Ohio 2004) .........................................................................20, 21

*In re Global Crossing, Ltd. Sec. Litig.*,
471 F. Supp. 2d 338 (S.D.N.Y. 2006) ................................................................................17

*In re Huntington Bancshares Inc. Sec. Litig.*,
674 F. Supp. 2d 951 (S.D. Ohio 2009) .................................................................................3

*In re IndyMac Mortgage-Backed Sec. Litig.*,
793 F. Supp. 2d 637 (S.D.N.Y. 2011) ................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004) .........................................................................................13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2nd Cir. 2010).........................................................................................8, 18

*In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation*,
636 F. Supp. 1138 (C.D. Cal. 1986) ....................................................................................9

*In re Sterling Foster & Co., Inc. Sec. Lit.*,
222 F. Supp. 2d 216 (E.D.N.Y. 2002) ...............................................................................21

*In re Thornburg Mortgage, Inc. Sec. Litig.*,
695 F. Supp. 2d 1165 (D.N.M. 2010)..................................................................................19

*In re Vivendi Universal S.A.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................................................19

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) ............................................................. 20

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) ............................................................... 13

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991) ..................................... 9

*Lee v. Ernst & Young, LLP*,
  294 F.3d 969 (8th Cir. 2002) ............................................................... 14

*Levitt v. Bear Stearns & Co.*,
  340 F.3d 94 (2d Cir. 2003) ................................................................. 11

*Lilley v. Charren*,
  936 F. Supp. 708 (N.D. Cal. 1996) .......................................................... 14

*Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth
  Third Bancorp*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010) ....................................................... 20

*Lukas v. McPeak*,
  730 F.3d 635 (6th Cir. 2013) ................................................................ 1

*Maher v. Durango Metals, Inc.*,
  144 F.3d 1302 (10th Cir. 1998) .......................................................... 19, 22

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
  65 F.3d 1044 (2d Cir. 1995) ................................................................ 17

*Menowitz v. Brown*,
  991 F.2d 36 (2nd Cir. 1993) ................................................................ 11

*Metge v. Baehler*,
  762 F.2d 621 (8th Cir. 1985) ............................................................... 21

*Nakkhumpun v. Taylor*,
  782 F.3d 1142 (10th Cir. 2015) ............................................................. 15

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
  764 F.3d 1199 (10th Cir. 2014) .............................................................. 8

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
  336 F.3d 495 (6th Cir. 2003) ............................................................... 11

*North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.,*
929 F. Supp. 2d 740 (M.D. Tenn. 2013) ...............................................21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
575 U.S. ___, 135 S. Ct. 1318 (2015) ...........................................15, 16

*P. Stolz Family Partnership L.P. v. Daum,*
355 F.3d 92 (2nd Cir. 2004) .......................................................10

*Pinter v. Dahl,*
486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988) ..................18, 19

*Rosenzweig v. Azurix Corp.,*
332 F.3d 854 (5th Cir. 2003) ......................................................20

*Sanders Confectionery Prods. v. Heller Fin., Inc.,*
973 F.2d 474 (6th Cir. 1992) ......................................................21

*Schuh v. HCA Holdings, Inc.*
2014 WL 4716231 (M.D. Tenn. September 22, 2014) .............................8

*Sheldon Co. Profit Sharing Plan & Trust v. Smith,*
828 F. Supp. 1262 (W.D. Mich. 1993) ...........................................20

*Sloane Overseas Fund, Ltd. v. Sapiens Intern. Corp., N.V.,*
941 F. Supp. 1369 (S.D.N.Y. 1996) ..............................................11

*Smith v. Am. Nat'l Bank & Trust Co.,*
982 F.2d 936 (6th Cir. 1992) ......................................................19

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.,*
821 F.3d 780 (6th Cir. 2016) ........................................................9

*Toombs v. Leone,*
777 F.2d 465 (9th Cir. 1985) ........................................................9

*Truk Int'l Fund LP v. Wehlmann,*
737 F. Supp. 2d 611 (N.D. Tex. 2009) ...........................................15

*United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake
Energy Corp.,*
774 F.3d 1229 (10th Cir. 2014) ...................................................21

*Wuliger v. Owens,*
365 F. Supp. 2d 838 (N.D. Ohio 2005) ...........................................11

*Yates v. Municipal Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) .................................................................................10

**STATUTES**

15 U.S.C. § 77k(a) ......................................................................................... passim

15 U.S.C. § 77l.....................................................................................................19

15 U.S.C. § 77l(a)(2)....................................................................................... passim

15 U.S.C. § 77m......................................................................................... 2, 9, 10

15 U.S.C. § 77o.......................................................................................... 10, 21

15 U.S.C. § 77o(a)................................................................................................22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).........................................................................................8

Defendants Merrill A. McPeak, Don A. Turkleson, Marceau N. Schlumberger, Bob G. Gower, Joseph T. Leary, Charles M. Stivers, David M. Hall, William B. Richardson, and Catherine Rector (the "**Moving Individual Defendants**") file this brief in support of their motion to dismiss Plaintiffs' Master Consolidated Complaint (the "**Complaint**" or "**Compl.**").

## INTRODUCTION

This action is the latest in a series of lawsuits which attack the estimated value that Miller Energy Resources, Inc. ("**Miller Energy**" or the "**Company**") ascribed to oil and gas assets in Cook Inlet, Alaska that the Company acquired in 2009 (the "**Alaska Assets**"). The Complaint concerns the very same valuation estimate that underpinned the prior securities class action and shareholder derivative litigation over which this Court presided several years ago.[1] The estimate was based upon the opinions of an independent petroleum engineering firm and an independent appraiser, and was audited and blessed by two independent accounting firms over five consecutive years, but that does not deter plaintiffs and their lawyers from suing over this estimate yet again.

This time around, Plaintiffs allege that a September 2012 registration statement that Miller Energy issued in connection with a secondary shelf offering of shares (the "**Registration Statement**") was false and misleading because the Registration Statement incorporated by reference certain earlier financial statements which included the estimated value of the Alaska Assets. The Complaint alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "**Securities Act**") which impose liability for false or misleading statements made in a securities registration statement. The Complaint should be dismissed because it was filed too late, alleges claims against defendants that have no factual basis, and because Plaintiffs lack standing to bring claims under both Sections 11 and 12(a)(2).

---

[1] *In re Miller Energy Resources, Inc. Securities Litigation*, case no 3:11-CV-386 and *Lukas v. McPeak*, case no. 3:11-cv-00422. This honorable court granted the defendants' motion to dismiss the shareholder derivative action, which decision was affirmed in *Lukas v. McPeak*, 730 F.3d 635 (6th Cir. 2013). The Court partly granted and partly denied the defendants' motions to dismiss the *In re Miller Energy* class action on February 4, 2014 [Dkt. #67 in that case], after which the remaining parties negotiated a settlement that was approved by the Court.

Plaintiffs' Section 11 cause of action is time-barred by the applicable three-year statute of repose, 15 U.S.C. § 77m. The Registration Statement at issue here was declared effective on September 18, 2012. This lawsuit was filed on November 9, 2015, nearly two months after the three-year statute of repose ran. The Section 11 cause of action also is easily dismissed against defendants Schlumberger, Gower, Leary and Richardson, because all of them joined the Company months or years *after* the subject Registration Statement was filed, placing them outside the class of people who may be sued under Section 11 (*i.e.*, people who signed and/or issued a registration statement). A third ground for dismissal is the Complaint's failure to allege facts sufficient to establish that Plaintiffs actually purchased their shares directly in an offering, or "traceable" to the Registration Statement. To the contrary, the Plaintiffs' trading certifications filed with the Court definitively establish that Plaintiffs bought all of their shares in the aftermarket for Miller Energy stock, not in connection with a direct offering. Fourth, facts appearing on the face of the Complaint, and judicially noticeable stock prices, establish a complete lack of loss causation – the decline in Miller Energy's stock price mirrored the global crash of oil prices, not anything that the defendants did.

Plaintiffs' Section 12(a)(2) claim must be dismissed against all of the Moving Individual Defendants because they are not "statutory sellers," which is defined as a person who directly passed title of securities to, or directly solicited a sale to, the plaintiff. The Complaint does not allege that Plaintiffs purchased their Miller Energy shares directly from any of the defendants, which is a required element of a 12(a)(2) claim; to the contrary, Plaintiffs concede that they purchased all of their shares in the secondary market for Miller Energy shares. On a related but separate ground, the Section 12(a)(2) claim fails in its entirety because Section 12(a)(2) applies only to sales of newly issued stock in an offering, and not to secondary trading in aftermarket transactions.

All of the causes of action also should be dismissed pursuant to the one-year statute of limitations for Securities Act claims, 15 U.S.C. § 77m, which was triggered at the very latest in February 2014 when this Court denied motions to dismiss in the earlier securities class action,

finding that the class action plaintiffs had alleged sufficient facts to support their claim that the published Alaska Assets valuation estimate was misleading. The Plaintiffs were at that time placed on inquiry notice of their potential claims, which arise from the identical underlying facts. And on a global level, the Complaint is remarkably devoid of facts alleging that the Individual Moving Defendants did anything at all. Four individuals – Schlumberger, Gower, Leary and Richardson – appear to be named as defendants solely because they were directors for a short period of time; they did not sign anything, did not make any statement, and are not specifically alleged to have undertaken a single overt action. Five other individuals are named solely due to the fact that they signed the Registration Statement. These facts alone are insufficient to state a claim under any of Sections 11, 12(a)(2) or 15 of the Securities Act. The Complaint should be dismissed.

## I.     BACKGROUND FACTS

### A.     The Parties.

Miller Energy is a Tennessee corporation that engages in the exploration and production of oil and natural gas. Compl. ¶ 36. The Complaint names as defendants fourteen individuals who served as officers and/or directors of Miller Energy at various times, including the following nine Moving Individual Defendants:

- Catherine Rector, who served as the Company's Vice President and Chief Accounting Officer from July 2012 to October 2013 (Compl. ¶ 22);

- Charles M. Stivers, who served as an outside director from 2006 to June 18, 2015;[2]

---

[2] See concurrently filed Request for Judicial Notice ("**RJN**"), and June 18, 2015 Current Report on Form 8-K, attached as Exhibit A to attached to the Declaration of Robert D. Weber in Support of Moving Individual Defendants' Motion to Dismiss ("**Weber Decl**."). This Court may take judicial notice of documents incorporated by or integral to a complaint, or public records, including SEC filings, historical stock prices, press releases, and stock trading records. *See Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.*, No. 1:07-CV-750, 2009 WL 806714, at *4-7 (S.D. Ohio Mar. 25. 2009); *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 822 n.4 (E.D. Ky. 2008); *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 966, 969-70 (S.D. Ohio 2009).

- David M. Hall, a Company employee and officer who also served as a director from December 2009 to August 6, 2015 (Compl. ¶ 23);

- Gen. Merrill A. McPeak (Ret.), an outside director from April 2010 to April 16, 2014; [3]

- Don A. Turkleson, an outside director from January 2011 to April 16, 2014; [4]

- Marceau Schlumberger, an outside director who served after the Registration Statement became effective, from July 2013 to August 28, 2014; [5]

- Bob Gower, an outside director who served after the Registration Statement became effective, from April 2014 until March 29, 2016; [6]

- Joseph Leary, an outside director who served after the Registration Statement became effective, during a portion of 2014; [7] and,

- Gov. William Richardson, an outside director who served after the Registration Statement became effective, from April 2014 until September 16, 2015. [8]

Also named as defendants are nine underwriters who participated in the Offerings described in the Complaint, and certain additional individuals. [9] Compl. ¶¶ 28-39.

## B. The Valuation of Miller Energy's Alaska Assets

From the time it became public in 1996 until late 2009, Miller Energy was a modest oil and gas producer with operations limited to the Appalachian region of eastern Tennessee. Compl. ¶¶ 40-41. In December 2009, Miller Energy acquired significant new oil and gas assets

---

[3] See RJN, Miller Petroleum, Inc.'s April 26, 2010 Report on Form 8-K, attached as Exhibit B to the Weber Decl., and April 16, 2014 Report on Form 8-K (Weber Decl. Ex. C).

[4] RJN, Miller Petroleum, Inc.'s Jan. 17, 2011 Report on Form 8-K (Weber Decl. Ex. D), and Weber Decl. Ex. C

[5] See RJN, July 25, 2013 Report on Form 8-K (Weber Decl. Ex. E) and Aug. 28, 2014 Report on Form 8-K (Weber Decl. Ex. F).

[6] See RJN, Weber Decl. Ex. B, and Complaint ¶ 131.

[7] See RJN, Weber Decl. Exs. C and F.

[8] See RJN, Weber Decl. Ex. C, and Sept. 11, 2015 Report on Form 8-K (Weber Decl. Ex. G).

[9] Not included among the presently Moving Individual Defendants are individuals Deloy Miller, Scott Boruff, David Voyticky, Gerald Hannahs and Paul Boyd.

(leases, oil and gas reserves, drilling platforms and production equipment) in Alaska through its purchase of an Alaska limited liability company, Cook Inlet Energy, LLC , which had purchased those assets out of the bankruptcy proceedings of a company called Pacific Energy Resources. Compl. ¶¶ 42-45. Pacific Energy had acquired the Alaska Assets (and others) for over $400 million a little over two years earlier, in August 2007. See RJN and Weber Decl. Ex. H at p. 6 (Pacific Energy Annual Information Form as of December 31, 2008). Shortly thereafter, however, oil prices plummeted by approximately 50% as a result of the global financial crisis of 2008, which combined with Pacific Energy's highly leveraged balance sheet, caused Pacific Energy to file for bankruptcy. *Id.* at 27.

When Miller Energy acquired the Alaska Assets, it was required by GAAP to recognize the assets at fair value. If the purchase price an acquirer pays is less than the fair value of the assets acquired, the purchase is characterized as a "bargain purchase" and GAAP "requires the acquirer to recognize that excess in earnings as a gain." *See* Financial Accounting Standards Board Summary of Statement of Financial Accounting Standards ("SFAS") No. 141(R), Business Combinations.[10] Miller Energy's acquisition of the Alaska Assets was a bargain purchase, and was disclosed as such in the Company's publicly available SEC filings. Compl. ¶ 46. The Company estimated and disclosed that the Alaska Assets were worth $480 million, including "Oil and gas properties" estimated to be worth approximately $368 million, and "Fixed Assets" estimated to be worth $110 million. (The Company further disclosed that it was recognizing a "Bargain Purchase Gain" of more than $277.4 million.) *Id.* "Management's determination of the 'fair value' of the assets acquired and liabilities assumed…are not matters of objective fact." *Fait v. Regions Financial Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). Rather, fair value is an *estimate*. The Company's estimated values were based, in part, upon a reserve estimates report from an independent petroleum engineering firm (Compl. ¶ 46) and an asset replacement cost study provided by an independent insurance broker. Compl. ¶ 87.

---

[10] Miller adopted SFAS No. 141(R) on January 1, 2009 and disclosed its adoption of the Statement repeatedly in its SEC filings.

**C.      The 2012 Offering and Registration Statement.**

On September 6, 2012, Miller Energy filed with the SEC a Form S-3 Registration Statement for a "shelf" registration, or continuous offering process. Compl. ¶52. Under the shelf registration process, Miller Energy could issue and sell any combination of the common and preferred stock described in the Registration Statement in one or more offerings with a maximum offering price of up to $500,000,000. *Id.; see also*, Weber Decl. Ex. I.

The Registration Statement expressly incorporated by reference Miller Energy's annual reports for the fiscal year ended April 30, 2010, April 30, 2011 and April 30, 2012. Compl. ¶ 5, and see Weber Decl. Ex. I. The 2010 annual report was audited by Sherb & Co., LLP, and the annual reports from 2011 through 2015 were audited by KPMG LLP. Compl. ¶¶ 17, 47. Both of those independent auditors issued unqualified audit reports on the Company's financial statements, each and every year. *Id.* When the Company incorporated those annual financial statements by reference into the Registration Statement, it expressly stated that it was doing so "in reliance upon the reports of" KPMG LLP and Sherb & Co. LLP, both of which were "experts in accounting and auditing." [11]

The Registration Statement was signed by Moving Individual Defendants Hall, McPeak, Stivers, Rector, Turkleson and other persons who were then serving as Company officers and directors. Compl. ¶24. Moving Individual Defendants Schlumberger, Gower, Leary and Richardson **did not sign the Registration Statement or play any role in its drafting**, as each of them joined the Company months or years after the Registration Statement was filed with the SEC. The Registration Statement was declared effective by the SEC on September 18, 2012. Compl. ¶53.

The Company subsequently issued stock pursuant to the Registration Statement, at various points in time during the years 2013 and 2014 (the "**Offerings**" or individually, an "**Offering**"). Compl. ¶ 54.  At the time of each Offering, the Company issued prospectus

---

[11] *See* Registration Statement (Weber Decl. Ex. I), at p. 11.

supplements. *Id*. None of those prospectus supplements were signed by anyone. The Complaint does not allege which individuals prepared or issued the prospectus supplements; indeed, the Complaint does not allege a single fact regarding what role any of the Moving Individual Defendants played in the drafting or issuance of the prospectus supplements. The prospectus supplements themselves do not set forth any facts regarding the Alaska Assets or the valuation of those assets.

> **D.** **As Oil Prices Collapse, Miller Energy Writes Down The Value Of the Alaska Assets, Then Declares Bankruptcy.**

During the period from 2011 to mid-2014, world crude oil prices remained relatively stable and high, with benchmark Brent Crude pricing between and $100 and $125 per barrel.[12] But due to a glut on the market the developed over the course of 2014, oil prices began to drop precipitously. From a high of $115/barrel in mid-July 2014, the price dropped to below $50/barrel in January 2015. *Id*.

Based upon that steep and material decline in crude oil prices, the Company recognized an impairment charge of $265.3 million related to its Alaska Assets in December 2014, and wrote down the assets to their revised estimated fair value. Compl. ¶ 106. The continuing drop of oil prices into the first quarter of 2015 caused the Company to recognize that the Alaska Assets were further impaired, and triggered an additional write down of $150 million in March 2015. Compl. ¶ 107.

As the price of crude oil dropped, and Miller Energy correspondingly and appropriately wrote down the value of its reserves on its books, the market price of Miller Energy stock declined in parallel. The market price of Miller Energy's common stock declined from a high of $8.83 per share on December 9, 2013 (Compl. ¶ 51), to under one dollar per share in January 2015, and ultimately down to 63 cents per share on April 1, 2015.[13] All of this price decline happened before the SEC issued its Wells Notice indicating that the Commission staff would

---

[12] See RJN and List of historical benchmark oil prices, attached to the Weber Decl. as Ex. J.

[13] See RJN and List of historical Miller Energy stock prices, attached to the Weber Decl. as Ex. K.

recommend civil action (Compl. ¶112), which event the Complaint posits was a "corrective disclosure" regarding the Alaska Assets valuation estimate.

On October 1, 2015, Miller Energy and nine affiliated subsidiaries each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Alaska. Compl. ¶ 123. The Bankruptcy Court ultimately approved a Joint Plan of Reorganization that became effective on March 29, 2016, and the reorganized debtors emerged from their Chapter 11 cases. Compl. ¶ 126. As part of the Plan of Reorganization, all existing equity interests in Miller Energy were cancelled (including the preferred stock that is the subject of this Complaint). Compl. ¶ 127.

## II.    APPLICABLE PLEADING STANDARDS

"Sections 11 and 12(a)(2) of the Securities Act impose liability on certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions. Section 11 applies to registration statements, and section 12(a)(2) applies to prospectuses and oral communications." *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.,* 764 F.3d 1199, 1219 (10th Cir. 2014); 15 U.S.C. §§ 77k(a), 77l(a)(2). "To state a claim under section 11, the plaintiff must allege that: (1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010); *accord Schuh v. HCA Holdings, Inc.* 2014 WL 4716231 at *5 (M.D. Tenn. September 22, 2014). With some notable exceptions, claims under section 12(a)(2) have "roughly parallel elements" to those for a claim under section 11. *Morgan Stanley Info. Fund*, 592 F.3d at 359.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure

to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968, 167 L. Ed. 2d 929 (2007). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 678; 129 S. Ct. at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 679; 129 S. Ct. at 1950.

## ARGUMENT

### III. ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Section 13 of the Securities Act requires an action "to enforce any liability created under section 11 or section 12(a)(2)" to be commenced no later than one year after the date when discovery of an untrue statement or omission "should have been made by the exercise of reasonable diligence" or for a Section 11 claim at the latest three years after the security was "*bona fide* offered to the public" and "three years after the sale" for a Section 12(a)(2) claim. 15 U.S.C. § 77m. The Supreme Court has described this framework as a "1–year period after discovery combined with a 3–year period of repose." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991). The Plaintiffs have the burden of pleading facts that show compliance with Section 13's limitation periods. *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation,* 636 F. Supp. 1138, 1166 (C.D. Cal. 1986)(*citing Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985)). Plaintiffs' claims under both Section 11 and 12(a)(2) are untimely.

#### A. Plaintiffs' Section 11 Cause of Action Is Barred By the Three-Year Statute of Repose.

No Section 11 claim may be brought "more than three years after the security was *bona fide* offered to the public . . ." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.,*

821 F.3d 780, 792 (6th Cir. 2016). A security becomes "*bona fide* offered to the public" on the date when the registration statement for that security is deemed effective by the Securities Exchange Commission. *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 895 (4th Cir. 2014); *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 104-105 (2nd Cir. 2004). This is true even for shelf offerings such as the Offering at issue here, where shares may be issued periodically long after the applicable registration statement becomes effective; the three-year statute of repose for Section 11 claims against an issuer's officers and directors still begins to run on the date when the registration statement is deemed effective. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 174 (2nd Cir. 1992)("purchasers who acquired securities in a shelf offering more than three years after the initial registration would find their § 11 claims barred by the time limits of § 13, even if they bought the securities in reliance on a fraudulent, post-effective amendment to the registration"); *see also Federal Housing Finance Agency v. UBS Americas, Inc.*, 2012 WL 2400263, at *2–3 (S.D.N.Y. June 26, 2012).

Plaintiffs' Miller Energy shares became "*bona fide* offered to the public on September 18, 2012, when the Registration Statement became effective. Compl. ¶ 53. This lawsuit was filed more than three years later, on November 9, 2015; accordingly, Plaintiff's Section 11 claims are time-barred by the three-year statute of repose.

Likewise, because "Section 15 imposes vicarious liability for persons controlling violators of Sections 11 . . . [c]laims under that section therefore are subject to the statute of repose governing the primary violation [of Section 11]." *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642 (S.D.N.Y. 2011). To the extent that the Complaint seeks to impose Section 15 control person liability for a violation of Section 11, that claim is time-barred.

**B.      All Causes of Action Are Barred By the One-Year Statute of Limitation.**

Section 13 also creates a one year statute of limitations:  "No action shall be maintained to enforce any liability created under. . . this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ."  15 U.S.C. § 77m.  This one-year limitations period

"begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003). A duty to inquire arises "when the circumstances would suggest to an investor of ordinary intelligence the probability" that he has a cause of action. *Id.*; *accord New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).The plaintiff bears the burden of establishing that he commenced the action within the statute of limitations and, therefore, must demonstrate the point when he knew or should have known of the alleged wrongful act. *Wuliger v. Owens*, 365 F. Supp. 2d 838, 843 (N.D. Ohio 2005) (*quoting Harner v. Prudential Sec. Inc.*, 785 F. Supp. 626, 632 (E.D. Mich. 1992), aff'd 35 F.3d 565 (6th Cir. 1994)).

In this case, Lead Plaintiffs were placed on inquiry notice of their claims by the very SEC filings they rely upon in their Complaint. Miller Energy's Form 10-K filings in 2012, 2013 and 2014 all disclosed the existence of the class action lawsuits previously prosecuted in this Court. Those lawsuits were brought against the same defendants named here, alleging that the same Alaska Assets valuation and accompanying financial statements were false and misleading. Disclosure in SEC filings of ongoing civil litigation "specifically concern[ing] the very misrepresentations alleged in the [present] complaint[ ]," has been held to place plaintiffs in the later lawsuit on inquiry notice. *Sloane Overseas Fund, Ltd. v. Sapiens Intern. Corp., N.V.*, 941 F. Supp. 1369, 1375 (S.D.N.Y. 1996), *citing Menowitz v. Brown*, 991 F.2d 36, 42 (2nd Cir. 1993).

In its order issued in the *In re Miller Energy* class action on February 4, 2014 – more than 18 months before this litigation was filed – this Court stated that plaintiffs' allegations "about the value of the Alaska Assets," were sufficient to state a cause of action for securities fraud, specifically observing that "a reasonable person could conclude that the Miller Defendants knew . . . that the 'true value' of these assets was less than represented in statements to the public." This, of course, is precisely the fundamental basis for the claims that Plaintiffs assert here, and

placed Plaintiffs on inquiry notice that the Alaska Asset valuation could be erroneous. Because Plaintiffs did not file this lawsuit within the one-year limitations period following that inquiry notice, their claims should be dismissed.

## IV.  PLAINTIFFS' SECTION 11 CLAIM SHOULD BE DISMISSED.

### A.  Plaintiffs Cannot State A Section 11 Claim Against Defendants Schlumberger, Gower, Leary and Richardson, Because They Were Not Directors When The Registration Statement Was Filed And Did Not Sign It.

The Complaint alleges that the Registration Statement at issue was filed on September 6, 2012, and was declared effective on September 18, 2012. Compl. ¶¶ 52, 53. Moving Defendant Schlumberger did not join Miller Energy's Board of Directors until July 2013, and Moving Defendants Gower, Leary and Richardson did not join Miller Energy until 2014. See, notes 3-9, *infra*, and Weber Decl. Exs. A-G. These four individuals played absolutely no part in the preparation or dissemination of the Registration Statement, because they were not Miller Energy officers or directors at the time it was issued.

Section 11(a) expressly limits the classes of persons against whom a claim may be asserted to the following:

> (1) every person who signed the registration statement;
>
> (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the . . .registration statement . . .;
>
> (3) every person who . . . is named in the registration statement as being or about to become a director . . .;
>
> (4) every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement;
>
> (5) every underwriter with respect to such security.

15 U.S.C. §77k(a).

Defendants Schlumberger, Gower, Leary and Richardson do not fall under <u>any</u> of those categories. Accordingly, the Section 11 claim against each of them must be dismissed.

**B.     Plaintiffs Lack Standing To Bring A Section 11 Claim.**

Only persons acquiring securities that are the direct subject of an allegedly defective registration statement have standing to sue under Section 11. A plaintiff does not have standing under Section 11 unless he purchased shares either (1) directly in the public offering for which the allegedly misleading registration statement was filed, or (2) that are traceable to that public offering. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498-99 (5th Cir. 2005). Section 11's liability standing provision is narrow, and "a plaintiff must meet higher procedural standards." *Id.,* 402 F.3d at 495, 498-99. The higher procedural standards governing Section 11 claims require a plaintiff to actually "demonstrate that [its] shares are traceable to the challenged registration statement." *Id.* at 502. The mere probability that a plaintiff can trace its shares is insufficient. *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 864 (N.D. Tex. 2005); *see also Krim*, 402 F.3d at 492, 496-98, 502 (holding that 99.85% statistical likelihood of tracing shares to offering is insufficient).

Where, as here, multiple offerings are made from a single shelf registration statement, Plaintiffs are required to plead facts showing how their purchases may be traced to a specific offering: "The clear import of the statute is that Plaintiffs may only sue the underwriter of the offering to which they trace their shares. That both offerings originated from the same . . . Shelf Registration Statement is not determinative." *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1371 (N.D. Ga. 2005).

The importance of tracing share purchases to a particular offering can be easily seen in the particular facts of this case. The first two of Miller Energy's Series C Offerings, on September 28 and October 12, 2012, occurred more than three years before this lawsuit was filed, and thus, as explained above, an action based upon shares sold in those Offerings is time barred by Section 13's statute of repose.[14] But Plaintiffs purchased all of their shares on the secondary market, and it is unclear whether those shares were first introduced to the market

---

[14] Indeed, in apparent recognition of the fatal impact of the statute of repose, the Complaint notably does not allege a claim arising from either of those Offerings.

pursuant to original sales in Offerings as to which the statute of repose has run. Lead Plaintiffs'
transaction certifications clearly establish that none of their shares were purchased directly in an
Offering, on even within a week of the six Offering dates alleged in the Complaint – February
13, May 8, June 28, September 26 and October 17, 2013, and August 21, 2014. Compl. ¶ 54.[15]
None of the purchase dates listed by any Plaintiff corresponds with the actual date of any of the
Series C and Series D offerings, which establishes that Plaintiffs purchased all of their shares in
the aftermarket. Absent the pleading of specific facts identifying precisely from where each
plaintiff purchased his particular shares, it is impossible to know whether Plaintiffs purchased
their shares from the non-actionable earlier Offerings, or from one of the later-in-time Offerings.
*See Krim*, 402 F.3d at 498-502; *In re Dynegy, Inc. Sec. Litig.*, 2005 WL 807076, *1 (S.D. Tex.
Mar. 10, 2005) ("Lead Plaintiff conceded that '[d]irect, share-by-share tracing of Offering shares
is not possible [in the aftermarket].").

 Even before *Twombly* and *Iqbal* raised the pleading bar, it was clear that a plaintiff must
plead "facts" demonstrating the ability to trace his shares to a specific offering in order to confer
Section 11 standing. *Lilley v. Charren*, 936 F. Supp. 708, 716 (N.D. Cal. 1996) (granting motion
to dismiss Section 11 claim where plaintiff failed to plead sufficient facts demonstrating tracing);
*accord Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008) (granting
motion to dismiss Section 11 claim where plaintiffs failed to proffer "evidence" demonstrating
that the shares could be traced to the secondary offering); *Lee v. Ernst & Young, LLP*, 294 F.3d
969, 978 (8th Cir. 2002) (Section 11 claim could proceed only if plaintiffs make "a prima facie
showing" that the shares they purchased are traceable to the challenged registration statement).

---

[15] Plaintiff Gaynor alleges that he purchased Series D shares on April 28, 2015; Plaintiff
Goldberg alleges that she purchased Series D shares on August 20, 2015; Plaintiff Hull alleges
that he purchased both Series C and D shares, on various dates ranging from June 13, 2014
through and including May 6, 2015; Plaintiff Vorrath does not specify which class of shares he
purchased (common or preferred), or which series of shares he purchased. Plaintiff Vorrath
alleges that he purchased shares on various dates ranging from July 29, 2013 through and
including February 4, 2015. See certifications previously filed with Court [Dkt. No. 88-1].

Plaintiffs here do not plead a single fact in an attempt to demonstrate that the shares they purchased in the open market can be traced to the September 2012 Registration Statement. The Complaint relies instead on the boilerplate conclusion that Plaintiffs purchased shares "traceable to the SEC Form S-3 filed on September 6, 2012." Compl. ¶ 1. That pleading formulation was insufficient in the pre-*Twombly/Iqbal* era and does not fare any better now. *See, e.g., Lilley*, 936 F. Supp. at 716; *Peters*, 550 F. Supp. 2d at 1375.

### C. Oil and Gas Reserve Estimates Are Statements of Opinion That Plaintiffs Fail To Allege Were Subjectively False.

Plaintiffs' entire Complaint essentially amounts to second-guessing of the methodology that defendants Hall and Boyd used to estimate the value of the Alaska Assets. As statements of opinion, however, estimates are not actionable unless plaintiffs can plausibly allege that defendants did not actually believe those opinions at the time of the offerings. The complaint does not allege such "subjective falsity," and Plaintiffs' hindsight views about how the estimates should have been calculated do not amount to a Section 11 claim.

Because a sincerely held statement of opinion admits the possibility of error, such a statement will remain true – and is not an "untrue statement of . . . fact" under the Securities Act – even if the opinion ultimately proves incorrect. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. ___, 135 S. Ct. 1318, 1321 (2015); *see also Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015) (an opinion is not false unless "the speaker does not actually or reasonably hold that opinion.").

Oil and gas reserve estimates are considered statements of opinion for this purpose. *See Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 623 (N.D. Tex. 2009) (dismissing Securities Act claims where plaintiffs did not allege reserve estimates were not believed). This is because "valuation of petroleum reserves . . . involves a long and difficult process in which even highly regarded experts are ultimately forced to rely on their subjective judgments both in the selection and weighing of data." *Del Noce v. Delyar Corp.*, No. 72 Civ. 1819, 1976 WL 813 (S.D.N.Y. July 30, 1976). The Registration Statement here specifically notes that the Company's "reserve estimates" are "imprecise" by their nature (Weber Decl. Ex. I at p. 3), underscoring that

they were statements of opinion. See *Omnicare*, 135 S. Ct. at 1326 (statements of opinion tend to include qualifying language like "I think," "I believe," or other words "admitt[ing] the] possibility" that the view "could later prove [to be] erroneous").

Under *Omnicare*, an opinion can only be actionable as a misstatement if the speaker did not "actually hold[] the stated belief." *Id.* at 1326. There is no liability for a "sincere statement" of opinion or belief that "turn[s] out to be wrong." *Id*. at 1327. Separately, a claim of a material omission can be based on an opinion statement only if the plaintiff has identified "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 135 S. Ct. at 1332 (emphasis added). In either instance, the securities laws are "not an invitation to Monday morning quarterback an issuer's opinions." *Id.* at 1327.

Plaintiffs here do not allege the Alaska Asset valuation estimates were disbelieved by Hall, Boyd or any other defendant. To the contrary, the Complaint expressly states that Plaintiffs are <u>not</u> alleging intentional, fraud-based claims against the defendants (Compl. ¶ 1), which precludes any inference of knowing falsity. *Omnicare*, 135 S. Ct. at 1327. Further, Plaintiffs concede that Mr. Hall is "a non-accountant with no formal accounting training." Compl. ¶ 63. In connection with the initial valuation of Alaska Assets, Mr. Hall is alleged to have obtained a reserve report from an independent petroleum engineer, and provided it to Miller Energy's Chief Financial Officer. *Id.* Hall is alleged to have provided expense projections to that petroleum engineer that were lower than the past actual expenses incurred by the prior operator of the Alaska Assets (Compl. ¶ 82), but in the same paragraph Plaintiff concedes that Hall did so believing that Miller Energy could operate the assets "leaner" than the prior operator. *Id.* Hall also is alleged to have provided Miller Energy's CFO with a Loss Estimates Study prepared by a third party, which was used to support the Company's *estimated* value of the fixed asset portion of the Alaska Assets (drilling platform, pipelines, etc.). Compl. ¶¶ 71-78. But what the Complaint pointedly does not allege is whether non-accountant Mr. Hall had reason to subjectively believe that the *estimates* of the Alaska Assets' value which he derived and that

ultimately were published, were wrong. Absent the pleading of such facts, the Complaint fails to state a claim.

**D.      The Complaint Fails To Allege That Individual Defendants Made False Statements.**

As to four Moving Individual Defendants who joined Miller's board of directors after the 2012 Registration Statement became effective – Messrs. Richardson, Schlumberger, Gower, Leary and Richardson – the Complaint literally alleges nothing other than the fact that they were Company directors. They are not alleged to have made a single statement or done any particular act. The mere fact that an individual served as a director, standing alone, is insufficient to plead a cause of action.

The allegations against Individual Moving Defendants McPeak, Stivers and Turkleson are only the slightest bit less scant. These individuals are alleged to have served as Miller Energy directors at the time when the Registration Statement was filed, and are alleged to have signed it, (Compl. ¶ 30) but nothing more. There are no allegations that even attempt to describe the role that any of these individuals played in the making of Miller Energy's accounting determinations or financial reporting. The mere signing of a Registration Statement alone is not enough to state a claim for a violation of the Securities Act.

**E.      Negative Loss Causation Is Apparent from Plaintiffs' Allegations and The Judicially Noticeable Market Price of Miller Stock.**

Although loss causation is not an element of a Securities Act claim, a loss causation defense "can be considered on a motion to dismiss to the extent it is claimed that the lack of loss causation is apparent on the face of the complaint." *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 347-48 (S.D.N.Y. 2006); *see also In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1171 (C.D. Cal. 2008) ("The face of a complaint can provide a complete causation defense where the vast majority of a security's decline cannot be attributed to an alleged corrective disclosure."). The loss causation affirmative defense allows a defendant to avoid liability if the depreciation in the value of the security did not result from any nondisclosure or false statement made in the prospectus or registration statement. *Azzolini v.*

*Corts Trust II for Provident Financial Trust*, 2005 WL 3448053 at *5 (E.D. Tenn. December 14, 2005) (*citing McMahan & Co. v. Wherehouse Entertainment, Inc.,* 65 F.3d 1044, 1047-48 (2d Cir. 1995) ("where a defendant proves that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement, plaintiff is not entitled to recover any damages")).

Here, specific allegations in the Complaint, and judicially noticeable market prices of Miller Energy stock, clearly show that the vast majority of the decline in Miller Energy's stock price (and, with it, Plaintiffs' purported damages) was a reaction to the collapse of the oil market and had nothing to do with alleged belated revelations of inaccuracies in the Registration Statement. The Complaint notes that Miller Energy common stock reached an "all-time high price on December 9, 2013 of $8.83 per share." Compl. ¶ 51. Over the course of the following year, the price declined in lockstep with the global crash of crude oil prices (see RJN, Weber Decl. Ex. J), so that by December 9, 2014, the day before Miller Energy disclosed its first write-down of assets, the market price was only $1.35/share. See Compl. ¶ 106 and Ex. K. In other words, the price of Miller Energy stock declined 85% before the Company made a so-called "corrective disclosure" regarding the value of its Alaska Assets.

## V.    PLAINTIFFS' SECTION 12(A)(2) CLAIM SHOULD BE DISMISSED.

### A.    Plaintiffs Lack Standing To Bring A Section 12(a)(2) Against The Moving Individual Defendants, Who Are Not Statutory Sellers.

Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), imposes liability for selling a security by means of a prospectus or oral communication containing materially false or misleading statements or omissions of material fact. Section 12(a)(2) limits such liability to those persons who qualify as "statutory sellers;" a person who "'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" *In re Morgan Stanley*, 592 F.3d at 359 (*quoting Pinter v. Dahl*, 486 U.S. 622, 642, 647, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988)).

The Supreme Court has stated that the language of Section 12 "contemplates a buyer-seller relationship not unlike traditional contractual privity." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988). Under *Pinter*, a plaintiff may only assert Section 12(a)(2) claims against a defendant who either directly sold the security to the plaintiff, or directly solicited the plaintiff's purchase of the security. *Id.* at 647. In other words, Section 12(a) "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers." *Pinter*, 486 U.S. at 644 n. 21, 108 S. Ct. 2063 (citing 15 U.S.C. § 77l). Furthermore, liability extends only to those sellers and solicitors who are motivated at least in part by a desire to serve their own interests. *Pinter*, 486 U.S. at 647. It is not sufficient, however, "that the putative seller stands to benefit if the sale goes through; to be liable under a solicitation theory, he must have engaged in actual solicitation." *Smith v. Am. Nat'l Bank & Trust Co.*, 982 F.2d 936, 941 (6th Cir. 1992).

Plaintiffs' Section 12(a)(2) claims against the Moving Individual Defendants must be dismissed because they are not statutory sellers. To establish standing, Plaintiffs were required to plead that the *each named defendant* sold the securities to the plaintiff in the offering, or that *each named defendant* solicited that purchase and personally benefited from that solicitation. The Complaint alleges nothing of the sort. Plaintiffs do not specifically allege that they bought their shares directly from a defendant; to the contrary, Plaintiffs' transaction certifications [Dkt. No. 88-2] establish that they purchased their Miller Energy shares in the aftermarket. The lack of privity between Plaintiffs and any Defendant due to Plaintiffs' aftermarket purchases requires dismissal of the Section 12(a)(2) claim.

The Complaint also does not allege that each of the Moving Individual Defendants were motivated by a desire to serve their own financial interests or the interests of the securities' owner. *See, e.g., In re Vivendi Universal S.A.*, 381 F. Supp. 2d 158, 187 (S.D.N.Y. 2003) (dismissing claim where no "facts alleged to show how [defendant] stood to financially gain from his actions."). Plaintiffs' bare and conclusory allegation that the Moving Individual Defendants "promoted and sold Miller Energy preferred shares to Plaintiffs" (Compl. ¶ 153), is

not sufficient. *See In re Thornburg Mortgage, Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1220 (D.N.M. 2010), *on reconsideration*, 824 F. Supp. 2d 1214, 1277 (D.N.M. 2011).

The Section 12(a)(2) should be dismissed for the additional reason that Plaintiffs fail to allege the particular defendants from whom they purchased their shares. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998); *see also DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001), aff'd, 318 F.3d 170 (2d Cir. 2003) (dismissing plaintiffs' Section 12 claim against underwriter defendants because "the amended complaint d[id] not aver that any defendant was the immediate seller to any named plaintiff," or that any defendant "actively solicited any named plaintiff in connection with the sale" of security at issue); *Sheldon Co. Profit Sharing Plan & Trust v. Smith*, 828 F. Supp. 1262, 1280 (W.D. Mich. 1993) (dismissing Section 12 claim because plaintiffs failed to allege that the particular defendant solicited plaintiffs to buy stocks at issue). Instead of alleging from which defendant the shares were purchased, Plaintiffs simply parrot the generic requirements for Section 12 liability, alleging that the Moving Individual Defendants "promoted and sold Miller Energy preferred shares to Plaintiffs and the other members of the class." Compl. ¶ 153. This "formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at *4-5 (S.D.N.Y. Feb. 20, 2002) (holding that plaintiffs' "bald allegations" that defendants were "sellers, offerors, and/or solicitors of sales ... by means of the Prospectus" were insufficient to confer Section 12(a)(2) liability on the defendants).

## B. Plaintiffs Lack Standing To Bring A Section 12(a)(2) Claim Because They Did Not Purchase Directly In Any Offering.

Section 12(a)(2) applies only to purchases made through initial offerings and not to aftermarket trading. *Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 713 (S.D. Ohio 2010), citing *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995). Many courts have ruled that purchasers who buy their shares on the secondary market lack standing to assert Section 12(a)(2)

claims. *See, e.g., In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 602 (N.D. Ohio 2004) ("The Supreme Court has held that 12(a)(2) only applies to initial offerings and not to aftermarket trading."). *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870–71 (5th Cir. 2003); *Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000) (stating that Section 12(a)(2) gives "a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus."); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 689 (3rd Cir. 1991); *Caiafa v. Sea Containers Ltd.,* 331 F. App'x 14, 16–17 (2nd Cir. 2009); *In re Sterling Foster & Co., Inc. Sec. Lit.,* 222 F. Supp. 2d 216, 244 (E.D.N.Y. 2002) ("purchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2)."); *In re FirstEnergy Corp. Sec. Lit.*, 316 F. Supp. 2d 581, 602 (N.D. Ohio 2004). As noted above, Plaintiffs' certifications establish that they purchased their Miller Energy shares in the aftermarket, and not in any offering. Accordingly, they lack standing to bring their Section 12(a)(2) claim.

## VI.   PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED.

Section 15 of the Securities Act, 15 U.S.C. § 77o, imposes legal responsibilities upon the "controlling person" in a publicly traded company for violations of the Securities Act by their agents, subject to certain defenses. In order to plead control person liability in the Sixth Circuit, the "plaintiff needs to establish that the defendant ... actually participated in (i.e., exercised control over) the operations of the [primary violator] in general and that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated." *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992) (*quoting Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985)). "[T]itles and functions alone do not establish 'controlling person' status. There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed. Further, there must be some showing of actual participation in the activities which allegedly violated the securities laws. *North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.,* 929 F. Supp. 2d 740, 789 (M.D. Tenn. 2013). As noted above, the

Complaint is entirely bereft of any facts showing that most of the Moving Individual Defendants played any role whatsoever in the preparation of the Registration Statement and prospectus supplements.

More significantly, there can be no Section 15 liability here because Plaintiffs have failed to establish a primary violation of the Securities Act. Section 15 liability "[de]ends upon the success of claims under sections 11 and 12(a)(2)." *United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1234 (10th Cir. 2014) (quoting Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304–05 (10th Cir. 1998)); see 15 U.S.C. § 77o(a).

## VII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's Complaint.


DATED: February 15, 2017

**DLA PIPER LLP (US)**


  /s/ Robert D. Weber
Perrie M. Weiner (*pro hac vice*)
Robert D. Weber (*pro hac vice*)
2000 Avenue of the Stars, Fourth Floor
Los Angeles, CA 90067
Telephone: (310) 595-3000

Stephen A. Marcum (#7019)
MARCUM & PETROFF
Three Courthouse Square
P. O. Box 240
Huntsville, TN  37756
Telephone: (423) 663-9755
Fax 423-663-2111

Attorneys for Defendants Charles M. Stivers, David
M. Hall, Merrill A. McPeak, Don A. Turkleson,
Marceau N. Schlumberger, Bob G. Gower, Joseph T.
Leary, William B. Richardson and Catherine Rector

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage prepaid, and/or sent by electronic mail to the following:

Barrett Johnston Martin & Garrison, LLC
Douglas S. Johnston, Jr.
Jerry E. Martin
Timothy L. Miles
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

Robbins Geller Rudman & Dowd LLP
Christopher M. Wood
414 Union Street, Suite 900
Nashville, TN 37219

Robbins Geller Rudman & Dowd LLP
Samuel H. Rudman
Mary K. Blasy
58 South Service Road, Suite 200
Melville, NY 11747

Law Offices of Curtis V. Trinko, LLP
Curtis V. Trinko
William Margrabe
16 West 46th Street, 7th Floor
New York, NY 10036

*Attorneys for Plaintiff*

Bass, Berry & Sims PLC
W. Brantley Phillips, Jr.
Jeffrey P. Yarbro
150 Third Avenue South, Suite 2800
Nashville, TN 37201

Bass, Berry & Sims PLC
Shayne R. Clinton (BPR # 026245)
1700 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902

Williams & Connolly LLP
Steven M. Farina
Margaret A. Keeley
Amanda M. MacDonald
725 Twelfth Street NW
Washington, D.C. 20005
*Attorneys for the Underwriter Defendants*

Lawrence P. Leibowitz
Leibowitz Law Firm, PLLC
608 South Gay Street, Suite 200
Knoxville, TN 37902-1637
*Attorney for Defendant Scott M. Boruff*

David J. Voyticky
41 Eastern Pkwy. A
Brooklyn, NY 11238

Paul W. Boyd
8125 Ainsworth Dr.
Knoxville, TN 37909

*Defendants*

Dated:  February 21, 2017

                                        s/Robert D. Weber
                                        _____
                                        Perrie M. Weiner
                                        Robert D. Weber
                                        DLA Piper LLP
                                        2000 Avenue of the Stars
                                        Suite 400 North Tower
                                        Los Angeles, CA 960067
                                        *Attorneys for Defendants Deloy Miller, Catherine*
                                        *A. Rector, David M. Hall, Merrill A. McPeak, Don*
                                        *A. Turkleson, Bob G. Gower, Joseph T. Leary, and*
                                        *Marceau N. Schlumberger*