# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| KENNETH GAYNOR, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:15-cv-00545-TAV-CCS |
| | ) | **(Consolidated)** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELOY MILLER, et al., | ) | CLASS ACTION |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFCATION

| | |
|---|---|
| Perrie M. Weiner (*pro hac vice*) | S. Lawrence Polk (*pro hac vice*) |
| Michael A. Piazza (*pro hac vice*) | Stacey M. Mohr (*pro hac vice*) |
| Sean R. Crain (*pro hac vice*) | Melissa L. Fox (*pro hac vice*) |
| DLA PIPER LLP (US) | EVERSHEDS SUTHERLAND (US) LLP |
| 2000 Avenue of the Stars, Fourth Floor | 999 Peachtree Street, NE, Suite 2300 |
| Los Angeles, CA 90067 | Atlanta, Georgia 30309- |
| (310) 595-3000 | (404) 853-8004 |
| | |
| Stephen A. Marcum (BPR #007019) | W. Brantley Phillips, Jr. (BPR #018844) |
| MARCUM & PETROFF, P.C. | Jeffrey P. Yarbro (BPR #024207) |
| Three Courthouse Square | BASS, BERRY & SIMS PLC |
| P.O. Box 240 | Nashville, Tennessee 37201 |
| Huntsville, TN 37756 | (615) 742-7793 |
| (423) 663-9755 | |
| | Shayne R. Clinton (BPR #026245) |
| *Counsel for Defendants Deloy Miller,* | BASS, BERRY & SIMS PLC |
| *Charles M. Stivers, David M. Hall,* | 1700 Riverview Tower |
| *Merrill A. McPeak, Don A. Turkleson,* | 900 S. Gay Street |
| *Marceau N. Schlumberger, Bob G.* | Knoxville, Tennessee 37902 |
| *Gower, Joseph T. Leary, William B.* | (865) 521-6200 |
| *Richardson, and Catherine A. Rector* | |
| | *Counsel for Underwriter Defendants* |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND ......................................................................... 2

    A.    The Offerings of Miller Energy Series C and D Preferred Stock ............... 2

    B.    Negative News About Miller Energy's Alaska Assets ............................... 3

    C.    Lead Plaintiffs' Purchases and Involvement in this Litigation ................... 3

ARGUMENT AND CITATION OF AUTHORITY ....................................... 5

    A.    Class Certification Requires a "Rigorous Analysis" of the
            Requirements of Rule 23. ............................................................................ 5

    B.    The Proposed Class Does Not Meet Rule 23(b)(3)'s Predominance
            Requirement. ............................................................................................... 6

            1.    Individualized Inquiries Will Determine Whether Each Class
                   Member Can Trace His or Her Shares to a Particular Offering at
                   Issue. ............................................................................................. 7

            2.    Individual Inquiries Will Determine What Knowledge Each
                   Class Member Had at the Time of His or Her Purchase. ............... 10

            3.    Individual Inquiries Will Determine Whether Each Class
                   Member's Claims Are Barred by the Statute of Limitations. .......... 12

            4.    Plaintiffs Have Failed to Offer Any Evidence—As They Must—
                   Demonstrating Compliance With The Supreme Court's *Comcast*
                   Standard Regarding Damages. ....................................................... 14

    C.    The Proposed Class Is Overbroad, Precluding Certification. ..................... 17

    D.    Neither Lead Plaintiffs nor Their Counsel Have Shown They Can
            Adequately Represent the Proposed Class. ................................................ 18

            1.    Lead Plaintiffs Cannot Adequately Represent the Class. ............... 19

            2.    Plaintiffs' Counsel Cannot Adequately Conduct the Litigation. ...... 24

CONCLUSION ............................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abby v. City of Detroit*, 218 F.R.D. 544 (E.D. Mich. 2003) ........................................24

*Ballan v. Upjohn Co.*, 159 F.R.D. 473 (W.D. Mich. 1994) ........................................25

*Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741 (D. Minn. July 28, 2016).........................................................................................16

*Berger v. Compaq Comp. Corp.*, 257 F.3d 475 (5th Cir. 2002) ..................................19

*Bresson v. Thomson McKinnon Sec., Inc.*, 641 F. Supp. 338 (S.D.N.Y. 1986) ...........12

*Brown v. Electrolux Home Prods, Inc.*, 817 F.3d 1225 (11th Cir. 2016) ....................10

*Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122 (M.D. Tenn. Jun. 26, 2017) ..........16

*Butler v. Sterling*, No. 98-3223, 2000 WL 353502 (6th Cir. Mar. 31, 2000)...............12

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................5

*Cerdant, Inc. v. DHL Express (USA), Inc.*, 2010 WL 3397501 (S.D. Ohio Aug. 25, 2010) .............................................................................................................17

*Comast Corp. v. Behrend*, 569 U.S. 27 (2013)........................................... 14, 15, 16, 17

*Courtney v. Smith*, 297 F.3d 455 (6th Cir. 2002)........................................................25

*Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I)*, 563 U.S. 804 (2011)......................7

*Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472 (E.D. Tenn. 2016) ....................14

*Gardner v. First Am. Title Ins. Co.*, No. 00-2176, 2003 WL 221844 (D. Minn. Jan. 27, 2003) .................................................................................................6

*Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326 (D.C. Mich. 2001) ....................................................................12

*Gaynor v. Miller*, 2017 WL 3449078 (E.D. Tenn. Aug. 11, 2017) ...................2, 11, 18

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008).............................6, 10

*Givens v. Van Devere, Inc.*, 2012 WL 4092803 (N.D. Ohio April 27, 2012) ..............17

*Haliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ............................5

*In re AEP ERISA Litig.*, 2008 WL 421035 (S.D. Ohio Sept. 8, 2008) ........................24

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ............................................................18

*In re Constar Int'l Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009)...........................................................17

*In re Enron Corp.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006)............................................................19

*In re Friedman's Ins. Sec. Litig.*, 385 F. Supp. 2d 1345 (N.D. Ga. 2005) ....................................8

*In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ......................................................................10

*In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133 (N.D. Tex. 2014) .............................passim

*In re Miller Energy Res. Sec. Litig.*, No. 3:11-CV-386 (E.D. Tenn. 2011) ............................3, 11

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435 (D. Colo. 2015).............................................................................................................................16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ....................15

*In re Select Comfort Corp. Sec. Litig.*, 2000 WL 36097395 (D. Minn. May 12, 2000)...............................................................................................................................8

*In re State St. Bank & Tr. Co. Fixed Income Funds Invest. Litig.*, 774 F.Supp.2d 584 (S.D.N.Y. 2011).......................................................................................................18

*In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F.Supp.2d 152 (D. Mass.2004)....................8

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)............................................................................................................5, 17

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization*, 616 F. Supp. 2d 461 (S.D.N.Y. 2009) ....................................................19

*Isabel v. Velsicol Chem. Corp.*, 2006 WL 1745053 (W.D. Tenn. June 20, 2006) ......................24

*Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630 (C.D. Cal. 2010)................................................23

*Kelley v. Galveston Autoplex*, 196 F.R.D. 471 (S.D. Tex. 2000).................................................12

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) ..........................................22

*La Grasta v. First Union Sec. Inc.*, 358 F.3d 840 (11th Cir. 2004)..............................................12

*Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ...........................................7

*Mulford v. Altria Group, Inc.*, 242 F.R.D. 615 (D. N.M. 2007).................................................12

*Murphy v. Prof'l Transp., Inc.*, 2017 WL 5665901 (S.D. Ill. Nov. 27, 2017).............................23

iii

*N.J. Carpenters Health Fund v. Royal Bank of Scotland*, 709 F.3d 109 (2d Cir. 2013)................................................................................................10

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495 (6th Cir. 2003) ........................................................................13

*Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529 (N.D. Tex. 2005) ....................19, 22, 23

*Parko v. Shell Oil Co.*,739 F.3d 1083 (7th Cir. 2014) ................................................15

*Pettrey v. Enter. Title Agency, Inc.*, 242 F.R.D. 384 (N.D. Ohio 2007) ......................17

*Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D. Mich. 2001)..........................12

*S&M Homes, LLC v. Chicago Title Ins. Co.*, 2014 WL 12634492 (W.D. Tenn. Mar. 14, 2014)................................................................................19, 22

*S&M Homes, LLC v. Chicago Title Ins. Co.*, 623 F. App'x 722 (6th Cir. 2015) .........19

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ..............................................................................5, 6, 7, 10

*Schuh v. HCA Holdings Inc.*, 2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014) .................7, 8, 11

*Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307 (E.D. Va. 2007) ...............................20, 24

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000).....................................................24

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ..........................10

*Umsted v. Intelect Commc'ns Inc.*, 2003 WL 79750 (N.D. Tex. Jan. 7, 2003)............19

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) ................................................24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................5

*Waste Mgmt. Holdings Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ......................10

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012)..........................6, 19

## **Statutes**

15 U.S.C. § 77l(b) ........................................................................................................16

15 U.S.C. § 77k(a) ..........................................................................................................8

15 U.S.C. § 77k(e) ........................................................................................................16

15 U.S.C. § 77m..............................................................................................................7

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 5, 17, 20

Fed. R. Civ. P. 23(a) ............................................................................................ 5, 18, 19, 26

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 24

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 5, 10

WEST\280483188.1

Defendants Deloy Miller, Charles M. Stivers, David M. Hall, Merrill A. McPeak, Don A. Turkleson, Marceau N. Schlumberger, Bob G. Gower, Joseph T. Leary, William B. Richardson, and Catherine A. Rector (collectively, the "Individual Defendants"); together with Defendants MLV & Co. LLC, Maxim Group LLC, National Securities Corp., Aegis Capital Corp., Northland Capital Markets, Dominick & Dickerman LLC, Ladenburg Thalmann & Co. Inc., and I-Bankers Securities, Inc. (collectively, the "Underwriter Defendants"); hereby file this joint brief in opposition to Plaintiffs' motion for class certification (Doc. 131).

## INTRODUCTION

Plaintiffs' motion for class certification is bereft of any evidence establishing that they can meet the requirements of Rule 23. Instead of presenting any such proof, Plaintiffs rely solely on vague and outdated pronouncements about securities class actions, the allegations in their complaint, and Lead Plaintiffs' own boilerplate declarations (one of which was proven false at deposition, leading to the voluntary dismissal of that Plaintiff).

An examination of the elements of Plaintiffs' claims, Defendants' defenses to those claims, and the proof required to adjudicate those claims and defenses shows that the proposed class cannot be certified. The unique facts of this case—the multiple offerings, some outside of the statute of repose; the myriad information in the market about the alleged misstatements, including a previous class action making virtually identical allegations—show that individualized issues will predominate over any purported common issues. Moreover, in light of the Court's prior finding on the date of the corrective disclosure, the class definition is overbroad, including investors who sold shares prior to the August 2015 corrective disclosure. Finally, the deposition testimony of the Lead Plaintiffs contradicts their self-serving declarations and establishes that neither they nor their counsel can adequately represent the proposed class.

WEST\280483188.1

## RELEVANT BACKGROUND

**A.    The Offerings of Miller Energy Series C and D Preferred Stock**

As detailed in the Court's order on Defendants' motions to dismiss, *Gaynor v. Miller*, 2017 WL 3449078 (E.D. Tenn. Aug. 11, 2017), Plaintiffs' Section 11 claims are premised on alleged misstatements contained in a September 2012 shelf registration statement used in offerings of preferred stock of Miller Energy Resources, Inc. Series C shares of the preferred stock were issued at five offerings, on September 28, 2012, October 12, 2012, February 13, 2013, May 8, 2013, and June 28, 2013. (Doc. 98-17; Doc. 98-18; Doc. 106 at 3.) And Series D shares were issued in offerings on September 26, 2013, October 17, 2013, and August 21, 2014. (Doc. 106 at 3.) Because the first of the consolidated actions in this case was not filed until November 9, 2015, Plaintiffs' claims—and the proposed class definition—do not involve the first two offerings of Series C shares in 2012, which fall outside the three-year statute of repose. These two offerings together accounted for 69% of Series C shares in circulation. (Doc. 97 at 13–14; Doc. 98-17; Doc. 98-18.)

In addition, not all Defendants were involved in each of the six offerings at issue. As to the Underwriter Defendants, for example, Defendant I-Bankers only participated in the final Series D offering in August 2014, which involved less than 20% of the total Series D shares offered (Doc. 92 ¶ 54); Defendant D&D also was involved in only one offering, the first Series D offering in September 2013 (*id.*); Defendant Ladenburg Thalmann was involved in only two of the three Series D offerings; and Defendant Aegis participated in three of five Series C offerings but only one Series D offering (*id.*). The combination of Individual Defendants who held officer and/or director positions during each offering is similarly varied: Mr. Hall, director from December 2009 to August 6, 2015; Mr. Leary, director from April 16 to August 28, 2014; Gen. McPeak, director from April 2010 to April 16, 2014; Mr. Miller, board chair from late 1990s to

September 14, 2014; Ms. Rector, Chief Accounting Officer from July 2012 to October 4, 2013; Gov. Richardson, director from April 16, 2014, to September 11, 2015; Mr. Schlumberger, director from July 25, 2013, to August 28, 2014; Mr. Stivers, director from 2006 to June 18, 2015; Mr. Turkleson, director from January 2011 to April 16, 2014; Mr. Gower, director from April 17, 2014, to March 29, 2016. (Ex. A (Piazza Decl.) Exs. 1–13.)

**B.     Negative News About Miller Energy's Alaska Assets**

The alleged misstatements on which Plaintiffs base their claims relate to the valuation of certain oil and gas assets located in Alaska. But doubts about Miller Energy's viability surfaced years before the 2013 and 2014 offerings at issue. As discussed in the Court's prior order, an article in *TheStreetSweeper* questioned the valuation of the Alaska Assets in 2011, leading to a class action lawsuit, *In re Miller Energy Res. Sec. Litig.*, No. 3:11-CV-386 (E.D. Tenn. 2011), which settled in 2014. Miller Energy repeatedly disclosed the existence of that class action in its SEC filings. (*E.g.*, Doc. 98-4 at 28; Doc. 98-5 at 44.) From March 2010 to July 2015, there were numerous publicly available materials relating to investments in Miller Energy, including negative news published about the valuation of the Alaska Assets. (Ex. A ¶ 37 (summary of publications) & Exs. 14–35 (copies of publications).) Indeed, Lead Plaintiff Christopher Vorrath testified that he found various negative news articles through Google searches, and he even reached out to a representative of Miller Energy with concerns about the stock's performance. (Ex. B (Vorrath Dep. Excerpted) at 57:4–61:16.)

**C.     Lead Plaintiffs' Purchases and Involvement in this Litigation**

The Lead Plaintiffs, Kenneth Gaynor, Marcia Goldberg, and Christopher Vorrath, all have very different trading histories. While Ms. Goldberg made one purchase of Series D shares that Plaintiffs' claim was directly pursuant to the August 21, 2014, offering, Mr. Gaynor made his purchase of Series D shares in the secondary market on April 28, 2015 (Ex. C (Gaynor Dep.

3

Excerpted) at 31:22–32:12; Doc. 132-2 at 2), while Mr. Vorrath purchased an unknown number of Series C shares from Fidelity Investments on at least 34 different occasions from prior to July 2013 through February 2015. (Doc. 132-4 at 7; Ex. B at 33:14–16.) Both Mr. Gaynor and Mr. Vorrath testified that they had no way of tracing their shares to any particular offering. (Ex. C at 53:4–10, 55:1–56:12, 69:16–23, 75:24–76:3; Ex. B at 32:21–34:2, 93:1–95:20.) Mr. Gaynor and Ms. Goldberg testified that their knowledge of Miller Energy came from conversations with their financial advisor (Ex. C at 16:11–20:2, 50:9–15; Ex. D at 9:13–10: 23, 25:25–26:13), while Mr. Vorrath never used a financial advisor and researched investments using Fidelity and Google searches informed by his own 30 years of investing experience. (Ex. B at 20:24–24:22.)

Plaintiffs' testimony also raised questions about their adequacy—and that of their counsel—to represent the class. For example, Ms. Goldberg does not understand the duties of a class representative (Ex. D (Goldberg Dep. Excerpted) at 49:7–13, 54:3–7), does not take an active role in supervising the case or review documents before they are filed (indeed, she does not even know whether a motion for class certification has been filed, or what class certification means) (*id.* at 51:13–17, 52:12–14, 66:1–12), does not know when the case was initiated or when and where trial will take place (*id.* at 45:25–46:6, 53:2–7), cannot identify the defendants (*id.* at 47:3–22, 68:20–69:25), and cannot describe the alleged misrepresentations at issue (*id.* at 70:9–24). Mr. Gaynor also lacks a basic understanding of this lawsuit (Ex. C at 55:19–56:15, 61:16–62:7), has never reviewed the registration statement at issue and cannot identify any misrepresentation in that document (*id.* at 76:7–20), cannot identify the defendants or the claims against them (*id.* at 62:8–64:5, 74:2–6; 75:24–76:3), and has failed to preserve evidence by changing his mobile-phone carrier and causing responsive communications related to this litigation with his financial advisor to be deleted. (*Id.* at 18:4–19:4, 20:6–21, 21:14–22:13.)

WEST\280483188.1

Similarly, Mr. Vorrath is unable to identify any alleged misstatement in the registration statement (Ex. B at 100:1–103:8), cannot recognize most defendants' names or explain why they are named in this lawsuit (*id.* at 95:21–96:8, 121:7–124:16), and admits that he does not understand the duties a class representative owes to the class. (*Id.* at 32:16–20.)

## ARGUMENT AND CITATION OF AUTHORITY

**A.**    **Class Certification Requires a "Rigorous Analysis" of the Requirements of Rule 23.**

Class certification is appropriate only if, after conducting a "rigorous analysis," the trial court is satisfied that the prerequisites of Rule 23 have been met. *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). "To merit certification, a putative class must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation." *Sandusky Wellness Ctr. v. ASD Specialty Healthcare*, 863 F.3d 460, 466 (6th Cir. 2017). And certification under subdivision (b)(3) is permitted only when common issues predominate and class treatment is superior to alternative methods of resolving the claims. *Id.* "In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Id.* at 466–67.

"[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including . . . the predominance requirement of Rule 23(b)(3)." *Haliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014). Plaintiffs must "affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law, or fact, etc." *Dukes*, 564 U.S. at 350; *Sandusky*, 863 F.3d at 466–67. The need for actual proof reflects that a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

5

Plaintiffs have not come close to affirmatively demonstrating compliance with Rule 23. Their brief relies solely on the allegations in the complaint and the Plaintiffs' bare-bones, self-serving declarations—at least one of which has since been proven to be false. That Plaintiffs' claims can be tried on a classwide basis is pure speculation.

**B.**     **The Proposed Class Does Not Meet Rule 23(b)(3)'s Predominance Requirement.**

Plaintiffs cannot show that any alleged common questions predominate over the individualized inquiries that this litigation will necessarily entail. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 544 (6th Cir. 2012) (internal citation omitted). In assessing predominance, the court must identify the substantive issues that will control the outcome and "consider how a trial on the merits would be conducted if a class were certified." *Sandusky*, 863 F.3d at 468 (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008)); s*ee also Gardner v. First Am. Title Ins. Co.*, 2003 WL 221844, at *6 (D. Minn. Jan. 27, 2003) ("predominance inquiry requires 'a pragmatic assessment of the entire action and of all the issues involved'") (citation omitted).

Here, myriad individualized issues will control the outcome of each class member's claim: Are the shares he or she purchased traceable to any of the six offerings at issue? Did he or she have knowledge of the alleged misstatements at the time of the purchase? Was he or she on notice of the alleged misstatements prior to one year before suit was filed? How can damages be determined on a classwide basis? Plaintiffs cannot satisfactorily answer any of these questions.

WEST\280483188.1

1.  **Individualized Inquiries Will Determine Whether Each Class Member Can Trace His or Her Shares to a Particular Offering at Issue.**

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). A court should focus on whether "the same evidence will suffice for each member to make a prima facie showing." *Sandusky*, 863 F.3d at 468. To prevail on a Section 11 claim, a plaintiff must show that: "1) he or she purchased a registered security; 2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11; and, 3) the registration statement contained untrue statements or contained omissions of material fact." *Schuh v. HCA Holdings Inc.*, 2014 WL 4716231, at *5 (M.D. Tenn. Sept. 22, 2014) (citing *Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).[1] An "action [] to enforce liability created under" Section 11 cannot be brought "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m.

Plaintiffs' proposed class definition attempts to incorporate these requirements, limiting the class to persons who purchased shares only "pursuant and/or traceable to the public offerings on February 13, 2013, May 8, 2013, and/or June 13, 2013" of Series C preferred stock "and/or the public offerings on September 26, 2013, October 17, 2013, and/or August 21, 2014" of Series D preferred stock. (Doc. 131 at 1.) For all but direct purchasers, however, determining whether shares are traceable to one of these offerings is nearly impossible. As discussed below, these individualized inquiries bear on at least two of the requirements for each class member's section 11 claim: the liability of each defendant and compliance with the three-year statute of repose.

---

[1] As recognized by Plaintiffs, "[t]he Section 15 claim is derivative of the Section 11 . . . claim[], and thus, does not warrant separate consideration." *See Hicks v. Morgan Stanley*, 2003 WL 21672085, at *6 n.6 (S.D.N.Y. July 16, 2003).

7

### a. *Aftermarket purchasers cannot trace their shares to an offering involving any particular group of defendants.*

The second element of their claim requires Plaintiffs to show that "the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11." *Schuh*, 2014 WL 4716231, at *5; *accord* 15 U.S.C. § 77k(a) (governing who can be liable under Section 11). To establish liability as to any of the 18 Defendants, each class member will have to show that his shares can be traced to the offering(s) in which that Defendant participated. *See In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1371 (N.D. Ga. 2005) ("The clear import of [§ 77k(a)] is that Plaintiffs may only sue the underwriter of the offering to which they trace their shares. That both offerings originated from the same . . . Shelf Registration Statement is not determinative."); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152, 158–59 (D. Mass. 2004); *In re Select Comfort Corp. Sec. Litig.*, 2000 WL 36097395, at *2 (D. Minn. May 12, 2000) (dismissing Section 15 claim based on lack of traceability for Section 11 claim).

Here, as to the Underwriter Defendants, a different group of underwriters was involved in each of the offerings at issue. For example, I-Bankers and D&D each participated in only one offering and cannot be liable as to the other five offerings. (Doc. 92 ¶ 54.) Similarly, the Individual Defendants held officer/director positions with Miller Energy at different times and therefore would not have liability for all of the offerings. For example, Messrs. Leary, Richardson, and Gower were directors during only one of the offerings. (Ex. A, Piazza Decl. Exs. 7–8, 12–13.)

Plaintiffs' assertion that Plaintiff Goldberg purchased her Series D shares directly pursuant to the August 2014 offering (Doc. 131 at 16) merely highlights the individualized issues. Plaintiffs can point to no evidence sufficient to trace the shares of the other Plaintiffs, both of whom purchased stock in the secondary market. Mr. Gaynor made one purchase of

8

Series D shares from Henley & Co. on April 28, 2015 (Ex. C at 31:22–32:12; Doc. 132-2 at 2), while Mr. Vorrath made at least 34 purchases of Series C shares from Fidelity Investments over a period of years (Doc. 132-4 at 7–8; Ex. B at 33:14–16). Both Messrs. Gaynor and Vorrath testified that they had no way of tracing their shares to any particular offering. (Ex. C at 53:4–10, 55, 69:13–23, 75:1–76:3; Ex. B. at 32:21–34:2, 93:1–95:20.) Moreover, because of the different ways in which the Plaintiffs and other class members purchased their shares—different dates, different frequencies, different brokerages—their ability to trace those shares to a particular offering (and to the Defendants who participated in that offering) also will differ. Consistent with due process, each Defendant is entitled to proof that each class member can establish that Defendant's liability. This cannot be done on a classwide basis.

> **b.** ***Aftermarket purchasers of Series C shares cannot trace their shares to an offering within the three-year statute of repose.***

Purchasers of Series C shares will have another problem, because their stock very likely came from either of two offerings outside of the three-year statute of repose. Series C shares were offered on September 28 and October 12, 2012—both more than three years before this action was filed on November 9, 2015. In fact, over 69% of Series C shares in circulation were issued in these first two offerings. (Doc. 98-17; Doc. 98-18.) Because there can be no liability under Section 11 as to shares that were issued in these offerings, each class member would have to individually establish that he or she had purchased her shares directly from (or somehow traceable to) one of the later offerings.

Mr. Vorrath's trading exemplifies this problem. He purchased Series C shares on at least 34 different occasions between July 29, 2013, and February 4, 2015, all aftermarket from Fidelity Investments. (Ex. B at 33:14–16; Doc. 132-4 at 7.) Mr. Vorrath also purchased Series C shares prior to July 2013, although he cannot remember which dates or whether he sold that

stock. (Ex. B at 27:8–19, 28:5–10, 37:8–38:25, 41:14–43:5.) Because he purchased his shares on the secondary market, it is extremely likely that at least some of the shares he purchased came from the fall 2012 offerings and therefore cannot be the basis of liability under the statute of repose. Whether any given class member purchased shares pursuant to one of the Series C offerings that is at issue, or can trace later-purchased shares to one of these offerings, will turn on discrete issues about their individual purchases.[2]

### 2. Individual Inquiries Will Determine What Knowledge Each Class Member Had at the Time of His or Her Purchase.

Individualized issues of investor knowledge further render Plaintiffs incapable of satisfying the predominance standard in this case. "[A]ffirmative defenses should be considered in making class certification decisions." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) (statute of limitations defense is appropriately considered at class certification stage); *see also Brown v. Electrolux Home Prods, Inc.*, 817 F.3d 1225, 1241 (11th Cir. 2016) (affirmative defenses defeat predominance where they apply to majority of class members and raise complex, individual questions or are coupled with other individual questions). The plaintiff retains the burden of proving predominance when individualized issues arise from an affirmative defense. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006); *Gene & Gene LLC*, 541 F.3d at 329. Because proof of an investor's knowledge of an alleged misstatement is a defense to every Section 11 claim, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 n.12 (2d Cir. 2013), "[p]laintiffs must show lack of knowledge to recover" on such claims, *In re IPO Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006)

---

[2] Because there is no administratively feasible way to determine which individuals purchased shares "pursuant and/or traceable to the public offerings" in the class definition, the proposed class also fails Rule 23(b)(3)'s superiority and ascertainability requirements. *See Sandusky*, 863 F.3d at 470–73 (discussing the overlap of the predominance, superiority, and ascertainability requirements and noting that courts often treat these requirements interchangeably).

WEST\280483188.1

(vacating class certification on this basis). The predominance requirement is not met where—as here—"individual knowledge inquiries might be necessary." *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 153 (N.D. Tex. 2014) (denying certification where individualized issues of investor knowledge predominated); *see also Schuh*, 2014 WL 4716231, at *7.

The facts of this case uniquely lend themselves to individualized issues of investor knowledge. Plaintiffs allege that Miller Energy "repeatedly overstated the value of the Alaska Assets in its periodic financial reports filed with the SEC between 2010 and August 2015." (Doc. 131 at 12.) But, during this same time period, numerous news articles and publications questioned the valuation of these very assets. (*See, e.g.*, Ex. A at Exs. 18–21.) Indeed, a class action filed in 2011 made nearly identical claims against many of the same defendants. *In re Miller Energy Res. Sec. Litig.*, No. 3:11-CV-386 (E.D. Tenn. 2011). As the Court noted in its previous order in this case, this alone raises factual questions about what individual class members knew and when about the alleged fraud. *Gaynor*, 2017 WL 3449078, at *13. Many of the proposed class members purchased shares after this lawsuit was filed and at various times after any of the news articles were published. In fact, Mr. Vorrath testified that he saw various news articles about these issues when he later reached out to a representative of Miller Energy with concerns. (Ex. B at 57:4–61:16.)

Some investors within the putative class would have been aware of this well-disseminated information, while others would not have been. Ms. Goldberg and Mr. Gaynor bought stocks on the recommendation of a financial advisor and did no independent research (Ex. C at 16:11–20:2; Ex. D. at 9:13–22, 10:17–23, 25:25–26:13), while Mr. Vorrath did his own internet research on potential investments (Ex. B at 20:24–24:22). Particularly given the vast amount of information published about Miller Energy and the Alaska Assets during the class

WEST\280483188.1

period, investor knowledge is not subject to common proof, and these individualized issues will predominate the trial of each class member's claims. *See Kosmos*, 299 F.R.D. at 152–54.

### 3. Individual Inquiries Will Determine Whether Each Class Member's Claims Are Barred by the Statute of Limitations.

Even if some Plaintiffs did not know of the misstatements at the time of their purchases, many of them would have known—or been on inquiry notice—prior to November 9, 2014, one year before this action was filed. Plaintiffs therefore cannot show compliance with the one-year statute of limitations—an "essential substantive ingredient" of a Section 11 claim—on a classwide basis. *See Bresson v. Thomson McKinnon Sec., Inc.*, 641 F. Supp. 338, 343 (S.D.N.Y. 1986). Courts consistently find the predominance requirement not met where individualized inquiries will be required into the facts regarding the statute of limitations. *See, e.g.*, *Butler v. Sterling*, 2000 WL 353502, at *7 (6th Cir. Mar. 31, 2000) (affirming finding that individualized questions would predominate where applicability of statute of limitations would depend on when each class member "discovered" or "had reasonable opportunity to discover the defendants' alleged misconduct"); *Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326 (E.D. Mich. 2001); *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615 (D.N.M. 2007); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 477–78 (S.D. Tex. 2000); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 593 (W.D. Mich. 2001).

The one-year statute of limitations for a Section 11 claim commences when the plaintiff had either actual knowledge or inquiry notice, meaning "knowledge of the facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotations omitted). "Storm warnings," such as prior litigation involving similar fraud claims, trigger a "duty to investigate" and "the limitation period begins to run only when a reasonably diligent

12

investigation would have discovered the fraud." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Here, news articles and analyst reports published between August 2011 and June 2013 about valuation of the Alaska Assets gave ample warning for class members to investigate the alleged fraud. (*See, e.g*, Ex. A at Exs. 18–21.) Indeed, enough information was in the market that investors filed a lawsuit based on nearly identical allegations 4 years before this case was filed. As the Court held in its order on the motions to dismiss in this case, the existence of the prior litigation alone raises factual issues about whether class members had inquiry notice of the alleged fraudulent representations. *Gaynor*, 273 F. Supp. 3d 848, at *13. That litigation was filed in 2011 and settled in 2014. Not only would many potential class members have been aware of that litigation prior to November 2014, but many of them would have been class members in that action and would have received class notice as part of its settlement. This, combined with the multiple instances of negative news about Miller Energy and the Alaska Assets, makes it impossible to determine on a classwide basis whether each class member knew or should have known about the alleged fraud prior to one year before this case was filed.

For example, the Lead Plaintiffs learned about their possible claims in different manners at different times. For example, Mr. Vorrath first became aware of the prior class action against Miller Energy "[a]t some point following Miller Energy's suspension of its dividend to preferred shareholders and/or its bankruptcy." (Ex. E (Vorrath Resp. Interrog.) at 5.) Plaintiffs Goldberg and Gaynor, by contrast, became aware of the prior class action through conversations with counsel. (Ex. F (Goldberg Resp. Interrog.) at 5; Ex. G (Gaynor Resp. Interrog.) at 5.) Similar individualized inquiries as to what each class member knew and when will overwhelm any common issues.

**4.      Plaintiffs Have Failed to Offer Any Evidence—As They Must—Demonstrating Compliance With The Supreme Court's *Comcast* Standard Regarding Damages.**

Flouting the Supreme Court's mandate in *Comast Corp. v. Behrend*, 569 U.S. 27 (2013), Plaintiffs exclusively rely upon their briefing—as opposed to any affirmative evidence—to show predominance under Rule 23(b)(3). That Plaintiffs' "submissions are akin to no evidence at all, under *Comcast*, ought to end the Court's predominance inquiry." *Kosmos*, 299 F.R.D. at 151–52 (denying certification of Section 11, 12(a)(2), and 15 claims where plaintiff offered no "quality proof" to support predominance). In *Comcast*, the Supreme Court decertified a class after the district court refused to engage in a merits-based inquiry scrutinizing plaintiffs' flawed damages model. The Court emphasized that a Rule 23(b)(3) class may only be certified if there is evidence demonstrating a classwide method of awarding relief consistent with the plaintiffs' theory of liability. 569 U.S. at 34. Plaintiffs must do more than provide an unsubstantiated damages methodology for the class; they must instead prove that this damages model could accurately measure classwide harm. *Id*. at 35; *see also Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472, 496–97 (E.D. Tenn. 2016) (denying class certification where plaintiff's expert testimony failed to establish a plausible method of calculating class damages).

Numerous courts have dissected plaintiffs' damages calculation assertions post-*Comcast*. For instance, in *Kosmos*, the court denied class certification, in part, because the lead plaintiff "never once point[ed] to evidentiary materials to support its predominance argument, referring exclusively to legal authorities and the parties' pleadings." 299 F.R.D. at 143. The court concluded that the plaintiff (and its lead counsel Robbins Geller) were essentially asking for an assumption that all securities class actions are certifiable. That "assumption"—as Plaintiffs and class counsel also make here—was "ill-founded":

14

> While it is true that courts have, at times, noted that cases brought pursuant to §§ 11 and 12 of the 1933 Act are "especially amenable" to class certification and resolution, *"it does not follow" from such isolated statements "that a court should relax its certification analysis, or presume a requirement for certification is met, merely because a plaintiff's claims fall within [the same] substantive categor[y]."* Simply put, none of the cases (or isolated quotes) cited by Lead Plaintiff support the proposition that plaintiffs who file suit under §§ 11 and 12 of the 1933 Act are excused from their Rule 23 evidentiary obligations.

*Id.* at 151 (emphasis added.) The court further emphasized that "Lead Plaintiff offered no proof from which to draw an inference that individual inquiries may not be required if the Court were to certify this putative class." *Id.* at 154. These shortcomings were fatal to class certification.

The D.C. Circuit Court of Appeals has summarized the state of the law following *Comcast*: "*No damages model, no predominance, no class certification.*" *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) (emphasis added). There, the court reversed certification where the plaintiffs' damages calculation model was questionable in supporting a finding of predominance. *Id.* at 254–55. Noting that damages models "are essential to the plaintiffs' claim [given] they can offer common evidence of class wide injury," the court remanded the case because plaintiffs did not provide evidence showing their model would accurately measure classwide damages. *Id.* at 253. In *Parko v. Shell Oil Co.*, the Seventh Circuit Court of Appeals similarly reversed the district court's grant of class certification under *Comcast*. 739 F.3d 1083, 1085 (7th Cir. 2014). Judge Posner reiterated that courts must receive evidence on the plaintiffs' injury and damages in light of any counterarguments before deciding whether to certify a class. Mere assertion by class counsel that common issues predominate is never enough. *Id.* at 1085–86 ("[I]f intentions . . . were enough, predominance . . . would be out the window. Nothing is simpler than to make an unsubstantiated allegation.").

WEST\280483188.1

Here, instead of offering a methodology bolstered by affirmative evidence, Plaintiffs suggest that classwide damages can be calculated based on "the statutory prescribed" formula in Section 11. This simplistic assertion, however, patently offends *Comcast* because it is not a methodology grounded in affirmative evidence, and any measure of damages must account for the part of stock price decline attributable to something other than the alleged misstatements. *Comcast*, 569 U.S. at 35, 37 (explaining that any methodology "must measure only those damages attributable to" defendants' alleged misconduct while eliminating "damages that are not the result of the wrong"); *see, e.g.*, 15 U.S.C. §§ 77k(e), 77l(b) (loss causation defense).

Plaintiffs' proffered authorities also cut against a finding of predominance here given the absence of evidentiary proof. The courts in *Beaver County*, *Oppenheimer*, and *Burges* all relied on affirmative evidence of damages methodologies in making their predominance findings, something totally absent here. *See Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *11 (D. Minn. July 28, 2016) ("The [Plaintiffs' expert report] satisfies what *Comcast* demands, that a viable calculation of damages can be made in this case."); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 447 (D. Colo. 2015) ("Plaintiff has proffered a damage report based on the statutory measures of damages for Section 11 and 12(a)(2) claims."); *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *11 (M.D. Tenn. June 26, 2017) (finding plaintiffs met their burden by submitting affirmative evidence and reserving "'battle of the experts' with regard to damages" issue for after class certification).

Here, by contrast, Plaintiffs have provided no damages model or other affirmative evidence supporting their assertion that damages can be determined on a classwide basis. And Plaintiffs cannot rely solely on their pleadings to establish this. *See Comcast*, 569 U.S. at 35; *Kosmos*, 299 F.R.D. at 151 (noting plaintiffs "must be prepared to prove *with facts*—and by a

16

preponderance of the evidence—the requirements of Rule 23") (emphasis in original). *Cf. In re Whirlpool*, 722 F.3d at 860 (explaining that *Comcast* "has limited application" only "[w]here determinations on liability and damages have been bifurcated"). Such evidentiary neglect precludes a finding of predominance and is fatal to Plaintiffs' motion.[3]

## C.    The Proposed Class Is Overbroad, Precluding Certification.

"A class definition may be overbroad if it includes members who have not suffered harm at the hands of the defendant and are not at risk to suffer such harm in the future." *Givens v. Van Devere, Inc.*, 2012 WL 4092803 (N.D. Ohio April 27, 2012). Such a class cannot be certified, particularly where individualized inquiries would be needed to determine which members indeed suffered the claimed harm. *See, e.g.*, *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2010 WL 3397501, at *5–6 (S.D. Ohio Aug. 25, 2010) (refusing to certify overbroad class and noting that, to the extent the court would have to engage in individualized factual inquiries to determine those class members who complied with the requirement, the class is not ascertainable); *see also Pettrey v. Enter. Title Agency, Inc.*, 242 F.R.D. 384, 386 (N.D. Ohio 2007) ("[I]it would also be counterproductive and unjust not to hold Plaintiffs to task for their own overbroad class definition. To hold otherwise gives class action plaintiffs a strategic incentive to propose unwieldy and burdensome classes—assured in the knowledge that if the original class does not slip by the Court a more limited class will be certified.").

---

[3] Plaintiffs' appeal to pre-*Comcast* authorities also is misplaced. *In re Constar Int'l Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009). As the *Kosmos* court noted, reference to *Constar* as an authority supporting class certification of Section 11 claims "does not square with the now-binding authority from the Supreme Court . . . which requires evidentiary support by the moving party and entails a rigorous review by the court." 299 F.R.D. at 136–37. *Constar's* holding granting certification despite the applicability affirmative defenses also does not support Plaintiffs' claims here, given Plaintiffs have offered no evidence to support predominance. *See Kosmos*, 299 F.R.D. at 154 ("[W]hile courts have been reluctant to deny certification based on the availability of affirmative defenses . . . that is not an issue in this case because . . . Lead Plaintiff has presented *zero* evidence showing that class-wide issues predominate") (emphasis in original).

WEST\280483188.1

Here, as the Court explained in its order on the motions to dismiss, Plaintiffs' Section 11 claim requires "loss causation," meaning that plaintiffs may claim only losses "that actually result from the . . . the material misstatement" at issue, and not "those that are somehow connected with the misstatement or even those that are simply 'within the zone of risk' of the misstatement.'" *Gaynor*, 2017 WL 3449078 at *12 (quoting *In re State St. Bank & Tr. Co. Fixed Income Funds Invest. Litig.*, 774 F. Supp. 2d 584, 595 (S.D.N.Y. 2011)). The Court further ruled that the only corrective disclosure that can possibly establish loss causation did not occur until August 6, 2015, when the SEC initiated an enforcement action. *Id*. at *13 (concluding that the earlier "disclosures either did not contain new information, or did not 'reveal to the market the falsity of the prior' statements or omissions, and they consequently cannot demonstrate loss causation as a matter of law").

But Plaintiffs have not limited their proposed class to purchasers who sold their stock after the August 6, 2015, corrective disclosure. Indeed, Lead Plaintiff Vorrath sold a large amount of Series C stock in August 2013, two years before the disclosure. (Doc. 132-4 at 7–8.) Individuals who sold Miller Energy stock before the August 2015 disclosures cannot establish loss causation, as a matter of law, and therefore cannot show that they suffered any injury tied to the alleged misstatements. The proposed class is therefore overbroad and cannot be certified.

**D.**    **<u>Neither Lead Plaintiffs nor Their Counsel Have Shown They Can Adequately Represent the Proposed Class.</u>**

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." The adequacy requirement is "essential" to protecting the due-process rights of absent class members. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (directing district court to decertify class where, as here, plaintiffs' "class certification motion simply allege[s] the elements of Rule 23(a) in conclusory terms"). In the context of securities

18

WEST\280483188.1

class actions, due-process concerns are even more pronounced, as the Private Securities Litigation Reform Act requires class representatives to "carefully choos[e] counsel and monitor[] counsel's performance." *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009). In addition to proving compliance with the other Rule 23 requirements, Plaintiffs also bear the burden of establishing that they and their counsel are adequate representatives—something they have not (and cannot) do here. *See Young*, 693 F.3d at 537.

### 1. Lead Plaintiffs Cannot Adequately Represent the Class.

To adequately represent the class, Plaintiffs must prove that they (1) "have common interests with unnamed members of the class" and (2) "will vigorously prosecute the interests of the class." *Id.* at 543. Telltale signs of inadequacy include the named plaintiff's indifference and a lack of involvement that may injure absent class members. *See S&M Homes, LLC v. Chicago Title Ins. Co.*, 2014 WL 12634492, at *10 (W.D. Tenn. Mar. 14, 2014), *aff'd*, 623 F. App'x 722 (6th Cir. 2015). This duty to protect the class is non-delegable: "[I]t is not enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack familiarity with the facts of the case." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001). Put differently, "[c]lass action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members." *Id.* at 484; *see, e.g.*, *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 732 (S.D. Tex. 2006) (denying class certification on adequacy grounds where the lead plaintiffs had "nearly total if not complete reliance on class counsel . . . for investigation and prosecution of the case . . ."); *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 537 (N.D. Tex. 2005) (same); *Umsted v. Intelect Commc'ns Inc.*, 2003 WL 79750, at *2 (N.D. Tex. Jan. 7, 2003) (finding proposed class representative inadequate where plaintiff "could

WEST\280483188.1

not identify the claims asserted in the Complaint or any alleged misrepresentations or omissions by [defendant]"); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007) (denying class certification where plaintiff lacked basic knowledge regarding named defendants).

For example, in *Kosmos*, the court denied class certification where the lead plaintiff, a pension plan, failed to demonstrate that it could adequately represent the interests of a putative class of investors. 299 F.R.D. at 146. The court highlighted the bright-line rule that "adequacy is the plaintiff's burden to prove[,] not the defendant's burden to disprove," and criticized the lead plaintiff's conclusory declaration from its board chair stating that she had "reviewed" the pleadings and "supervised" her lawyers. *Id.* at 148, 150. As the court recognized, "this type of generic detail is really no detail at all, for it provides naught by which to assess [the plaintiff's] credibility, her knowledge about the underlying facts of the case, or how much of what she has stated may have been prompted by counsel. Indeed, *any* potential class representative in *any* securities case could make almost identical assertions." *Id.* at 146 (emphasis in original).

Here, the record is similarly devoid of evidence establishing Plaintiffs' adequacy to serve as class representatives. Indeed, the only "evidence" before this Court are conclusory declarations (one of which, as discussed below, turned out to be false) in which Plaintiffs purport to "understand their roles and obligations as class representatives," as well as kitchen-sink compilations of Plaintiffs' counsel's law firm résumés. (*See* Doc. 131 at 18.) As shown by Plaintiffs' deposition testimony, this is insufficient to carry their exacting burden of proving adequacy. *See Kosmos*, 299 F.R.D. at 146 ("[G]eneralized detail[s]" in plaintiff's declaration, which "may have sufficed" when appointing lead plaintiff, "fall[] far short of satisfying the more stringent requirements for assessing the adequacy of" the plaintiff as class representative).

WEST\280483188.1

Ms. Goldberg, for example, lacks any real knowledge about this case and cannot supervise the litigation. Her testimony reveals a marked indifference to the interests of the proposed class:

Q:      When did you first talk to Mr. Astley?
A:      *The first time I spoke with him, two weeks ago when we had dinner.*
Q:      Had you ever spoken with anybody else from his law firm before, Robbins Geller?
A:      *No, I had not.*
Q:      Had you e-mailed with Mr. Astley or anyone at Robbins Geller before two weeks ago?
A:      *No, I have not.*
Q:      When did you become a class representative? . . .
. . . A:  *I would say two weeks ago when we met. . .*
. . . Q:  Did you look at the complaint before it was filed?
A:      *No, I did not.*
Q:      What is the class that you're seeking to be a representative of?
A:      *What does that mean?  I don't understand.*
. . . Q:  Do you understand what your role is as a class representative?
A:      *Not fully.*
Q:      Do you understand what duties you'd have as a class representative?
A:      *No, I do not . . . .*
. . . Q:  Do you understand that you have any obligations as to other class members who aren't named in the case?
A:      *No.  I don't know what those obligations would be.*
. . . Q:  Did you personally look for any documents?
A:      *No, because I didn't have any.*
Q:      And do you know whether you and the plaintiffs . . . have asked for any documents from the defendants?
A:      *I don't know.*
Q:      Do you know whether there's been any motion for class certification filed?
A:      *I do not know. Can I ask you a question . . . what does class certification mean?*

(Ex. D at 45:6–46:10, 49:7–13, 54:3–7, 65:22–25, 66:1–13 (emphasis added).) Ms. Goldberg testified that she only passively receives updates from her attorneys regarding this case—instead of taking an active role in supervising its prosecution—and does not review documents before they are filed. (*Id.* at 51:13–17, 52:12–14.) She similarly admitted not knowing when the case was initiated, or when and where the trial will take place. (*Id.* at 45:25–46:6, 53:2–7.) Mr. Vorrath also admitted that he does not understand the duties a class representative owes to the

21

class. (Ex. B at 32:16–20.) Lead Plaintiffs' unwillingness to understand fundamental aspects of this case (or take any supervisory role) render them inadequate to serve as class representatives. *See, e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987) (class certification in securities cases should be denied where plaintiffs' "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case"); *S&M Homes*, 2014 WL 12634492, at *11 (finding plaintiff inadequate where, despite understanding own claim, showed "indifference as a class representative" and did not know the class representative's role).

And Lead Plaintiffs consistently lacked any substantive knowledge regarding their own claims. When asked about the alleged misrepresentations on which the entire lawsuit is based, Ms. Goldberg could only say that "the people that were involved in this said that the stock was going to be something that it is not. . . . I don't know exactly, what it was done. But somebody – one of these people said that this stock was something that it is not." (Ex. D at 70:9–24.) Mr. Gaynor's comprehension of his claims is simply that he purchased a stock that he "felt . . . was going to be a good value" but "didn't turn out that way." (Ex. C at 61:16–62:7.) He never reviewed the registration statement and could not state whether he believed it contained any misrepresentation. (*Id.* at 76:7–20.) Mr. Vorrath also could not identify any alleged misstatement in the document that purportedly underlies his claims. (Ex. B at 99:21–103:8.) When asked about the complaint's allegation that his shares were "traceable to the offering," Mr. Gaynor speculated that the "offering," to him, was "just the fact that the stock was traded on the open market." (Ex. C at 55:19–56:15.) These broad-sweeping statements are insufficient to establish adequacy. *See Ogden*, 225 F.R.D. at 535 (class representative must have "knowledge, beyond knowing that money was lost, to support the allegations").

22

Lead Plaintiffs also were unable to identify the defendants in the case or their role in the alleged wrongdoing. *See Ogden*, 225 F.R.D. at 534–35 (class representatives "should at least have an understanding of why all of the individuals or companies are defendants"). Ms. Goldberg could not identify the defendants in this case and was not familiar with the allegations against them in the Complaint. (Ex. D at 47:3–22, 68:20–69:25.) Mr. Gaynor also struggled to recall the names of any defendant or explain their alleged connection to his claims. (Ex. C at 62:8–64:5, 74:2–6, 75:11–76:3.) Mr. Vorrath could not recognize most defendants' names or explain why they are named in the lawsuit. (Ex. B at 95:21–96:8, 121:7–124:16).

The ramifications of this inadequacy are demonstrated by Lead Plaintiffs' failure to meet their discovery obligations, including preservation of documents. Mr. Gaynor testified that, in May 2017, well after this lawsuit was initiated, he changed his mobile-phone carrier, causing all previous text messages to be deleted. (Ex. C at 21:14–22:7.) Among the communications permanently lost were those exchanged with Michael Laderer, a financial advisor who recommended that Mr. Gaynor purchase Series D shares—and who subsequently referred him and Ms. Goldberg to Plaintiffs' counsel, Curtis Trinko, in connection with this lawsuit. (*Id.* at 18:4–19:4, 20:6–21.) Mr. Gaynor did not preserve these communications, and they are now gone. (*See id.* at 22:8–13.) This failure to observe basic discovery obligations makes him inadequate to serve as class representative. *See Murphy v. Prof'l Transp., Inc.*, 2017 WL 5665901, at *7 (S.D. Ill. Nov. 27, 2017) ("A class representative is a fiduciary to the class, and his failure to comply with the requirements of discovery bears upon whether he will adequately fulfill his fiduciary obligations."); *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) ("[F]ailure to comply with reasonable disclosure obligations or discovery requests are factors that suggest the class representative is inadequate.")

WEST\280483188.1

Lead Plaintiffs' near-complete lack of knowledge, and their unwillingness to supervise counsel or understand a class representative's duties, forecloses them from serving as class representatives. *See In re AEP ERISA Litig.*, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008) (class representatives are "required to be more than window dressing or puppets for class counsel"); *Isabel v. Velsicol Chem. Corp.*, 2006 WL 1745053, at *7, *11 (W.D. Tenn. June 20, 2006) (finding plaintiffs who were uninterested in the state of the litigation inadequate to serve as class representatives); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("[C]lass representatives must show themselves sufficiently informed about the litigation to manage the litigation effort."); *Shiring*, 244 F.R.D. at 316 (holding plaintiff inadequate where deposition testimony revealed insufficient knowledge about case and undue reliance on counsel).

### 2. Plaintiffs' Counsel Cannot Adequately Conduct the Litigation.

To prove adequacy under Rule 23(a)(4), plaintiffs must separately show that "class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). "[I]t is not reputation built upon past practice, but rather competence displayed by present performance, which demonstrates the adequacy of counsel in a class action." *Abby v. City of Detroit*, 218 F.R.D. 544, 548 (E.D. Mich. 2003) (citation and internal quotation marks omitted).

Here, Plaintiffs' counsel has failed to conduct an adequate investigation of Plaintiffs' purported claims. At deposition, for example, Mr. Hull (a Lead Plaintiff recently dismissed from the lawsuit) revealed for the first time that—contrary to the statements in his recently signed declaration in support of class certification—he never bought or sold in his own name any Miller

WEST\280483188.1

Energy securities, and produced documents confirming that fact.[4] (Ex. H, Hull Dep. at 13:3–18 (excerpted).) Instead, he merely traded on behalf of his mother. (*Id.* at 13:19–21.) Inexplicably, these facts were revealed only during Mr. Hull's deposition, over two years after this case has been pending before this Court, and one year after Mr. Hull was appointed as a Lead Plaintiff. (Doc. 1; Doc. 91.) It is equally dubious that the documents produced by Mr. Hull for the first time during his deposition were not provided to Defendants in response to discovery requests.

Plaintiffs' counsel also has failed to adequately ensure that Plaintiffs preserve evidence. Mr. Gaynor testified that, in May 2017, well after this lawsuit was initiated, he changed his mobile-phone carrier, causing all previous text messages to be deleted. (Ex. C at 21:14–22:13.) Among the communications that were permanently lost were those exchanged with Mr. Laderer, a financial advisor with unique knowledge pertinent to this litigation. (*See id.* at 18:4-19:4, 20:6–21.) As demonstrated by Mr. Gaynor's deposition testimony, however, Plaintiffs' counsel did not ensure that Mr. Gaynor preserve these text messages. (*See id.* at 22:8–13.)

Regardless of past reputation, Plaintiffs' counsel's conduct in this litigation falls far short of the standard required for class counsel. *See Ballan v. Upjohn Co.*, 159 F.R.D. 473, 488–89 (W.D. Mich. 1994) (finding plaintiffs' counsel inadequate because of, among other things, failure to cooperate with discovery and investigate whether a plaintiff purchased stock). Plaintiffs, therefore, cannot establish adequacy under Rule 23(a)(4).

## CONCLUSION

For all these reasons, Lead Plaintiff's Motion for Class Certification should be denied.

---

[4] Because of this development, the parties suspended Mr. Hull's deposition and have stipulated to the "voluntary dismissal without prejudice of . . . Hull as a plaintiff in this action and of [his] claims against all Defendants." (*See* Ex. H, Hull Dep. at 15:15–18; Stip. of Vol. Dismissal (Doc. 139).) Mr. Hull's lack of standing necessarily precludes him from satisfying Rule 23(a)'s adequacy requirement in any event. *See Courtney v. Smith*, 297 F.3d 455, 467 (6th Cir. 2002).

25

Respectfully submitted,

s/ Michael A. Piazza
Perrie M. Weiner (*pro hac vice*)
Michael A. Piazza (*pro hac vice*)
Sean R. Crain (*pro hac vice*)
DLA PIPER LLP (US)
2000 Avenue of the Stars, Fourth Floor
Los Angeles, CA 90067
(310) 595-3000

Stephen A. Marcum (BPR #007019)
MARCUM & PETROFF, P.C.
Three Courthouse Square
P.O. Box 240
Huntsville, TN 37756
(423) 663-9755

*Counsel for Defendants Deloy Miller,*
*Charles M. Stivers, David M. Hall,*
*Merrill A. McPeak, Don A. Turkleson,*
*Marceau N. Schlumberger, Bob G.*
*Gower, Joseph T. Leary, William B.*
*Richardson, and Catherine A. Rector*

s/ S. Lawrence Polk
S. Lawrence Polk (*pro hac vice*)
Stacey M. Mohr (*pro hac vice*)
Melissa L. Fox (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
(404) 853-8004

W. Brantley Phillips, Jr. (BPR #018844)
Jeffrey P. Yarbro (BPR #024207)
BASS, BERRY & SIMS PLC
Nashville, Tennessee 37201
(615) 742-7793

Shayne R. Clinton (BPR #026245)
BASS, BERRY & SIMS PLC
1700 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
(865) 521-6200

*Counsel for Underwriter Defendants*


Pursuant to Rule 6 of the Electronic Case Filing Rules and Procedures for the U.S. District Court for the Eastern District of Tennessee, I certify that all signatories have consented to the filing of this document.

s/ Michael A. Piazza

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February 2018, I electronically filed the foregoing

**Defendants' Joint Brief in Opposition to Plaintiffs' Motion for Class Certification** with the

Clerk of Court using the Court's CM/ECF system, which will automatically send email

notification of such filing to all counsel of record who are CM/ECF participants. Parties may

access this filing through the Court's electronic filing system. All others below will also be

served by depositing a copy thereof in the United States Mail, first-class, postage prepaid.

Scott M. Boruff
3847 River Vista Way
Louisville, TN 37777

Gerald Hannahs
17710 Leatha Lane
Little Rock, AR 72223

David J. Voyticky
2652 Midvale Avenue
Los Angeles, CA 90064

William B. Richardson
1058 Encantado Dr.
Santa Fe, NM 87501

Paul W. Boyd
8125 Ainsworth Dr.
Knoxville, TN 37909

*Defendants*

*s/ Michael A. Piazza*
Michael A. Piazza

WEST\280483188.1